UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

EDWARD KOEHL,

                        Plaintiff,

v.                                                          9:06-CV-0478
                                                            (LEK/GHL)

GARY GREENE, Superintendent; GLENN GOORD
Commissioner; HOWARD SILVERBERG, Facility
Doctor; STEPHEN DALSHEIM. Superintendent,
Downstate Correctional Facility; and JULIE DANIEL,
IGRC Supervisor, Great Meadow Correctional Facility,

                        Defendants.

_____

APPEARANCES:

EDWARD KOEHL, 94-A-2890
   Plaintiff, *Pro Se*
Clinton Correctional Facility
P.O. Box 2001
Dannemora, NY 12929

HON. ANDREW M. CUOMO                          MICHAEL G. McCARTIN, ESQ.
Attorney General for the State of New York    STEPHEN M. KERWIN, ESQ.
   Counsel for Defendants                      Assistant Attorneys General
The Capitol
Albany, NY 12224

GEORGE H. LOWE, UNITED STATES MAGISTRATE JUDGE

## <u>REPORT-RECOMMENDATION</u>

        This action has been referred to me for Report and Recommendation by the Honorable

Lawrence E. Kahn, Senior United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local

Rule 72.3(c) of the Local Rules of Practice for this Court.  Generally, in this *pro se* civil rights

action brought under 42 U.S.C. § 1983, Edward Koehl ("Plaintiff"), who is currently incarcerated

by the New York State Department of Correctional Services ("DOCS"), alleges that five employees of DOCS–(1) Stephen Dalsheim, Superintendent of Downstate Correctional Facility, (2) Gary Greene, Superintendent of Great Meadow Correctional Facility, (3) Dr. Howard Silverberg, Physician at Great Meadow Correctional Facility, (4) Julie Daniel, Inmate Grievance Review Committee Supervisor at Great Meadow Correctional Facility, and (5) Glenn Goord, DOCS Commissioner ("Defendants")–violated his rights under the Eighth Amendment by being deliberately indifferent to his exposure to second-hand tobacco smoke at three DOCS correctional facilities between May 1992 and November 2006: Downstate Correctional Facility ("Downstate C.F.") from May 1992 to May 1994; Clinton Correctional Facility ("Clinton C.F.") from May 1994 to May 2002; and Great Meadow Correctional Facility ("Great Meadow C.F.") from May 2002 to November 2006.  (*See generally* Dkt. No. 16, ¶¶ II.A, II.C., II.D., IV.A. & Exs. 1-10 [Plf.'s Am. Compl.].)

Currently pending is Defendants' motion to dismiss Plaintiff's claims against Defendant Dalsheim for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  (Dkt. No. 27.)  For the reasons stated below, I recommend that Defendants' motion for partial dismissal be granted.

# I.    GENERAL LEGAL STANDARDS

## A.    Recently Revised Legal Standard for Motions to Dismiss

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  It has long been understood that a defendant may base such a motion on either or

both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Rule 8(a)(2);[1] or

(2) a challenge to the legal cognizability of the claim.[2]

Rule 8(a)(2) requires that a pleading include "a short and plain statement of the claim

showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Such a statement must

"give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it

---

[1]        *See* 5C Wright & Miller, *Federal Practice and Procedure* § 1363 at 112 (3d ed. 2004) ("A motion to dismiss for failure to state a claim for relief under Rule 12(b)(6) goes to the sufficiency of the pleading under Rule 8(a)(2).") (citations omitted); *Princeton Indus., Inc. v. Rem*, 39 B.R. 140, 143 (Bankr. S.D.N.Y. 1984) ("The motion under F.R.Civ.P. 12(b)(6) tests the formal legal sufficiency of the complaint as to whether the plaintiff has conformed to F.R.Civ.P. 8(a)(2) which calls for a 'short and plain statement' that the pleader is entitled to relief."); *Bush v. Masiello*, 55 F.R.D. 72, 74 (S.D.N.Y. 1972) ("This motion under Fed. R. Civ. P. 12(b)(6) tests the formal legal sufficiency of the complaint, determining whether the complaint has conformed to Fed. R. Civ. P. 8(a)(2) which calls for a 'short and plain statement that the pleader is entitled to relief.'").

[2]        *See  Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002) ("These allegations give respondent fair notice of what petitioner's claims are and the grounds upon which they rest. . . . In addition, they state claims upon which relief could be granted under Title VII and the ADEA."); *Wynder v. McMahon*, 360 F.3d 73, 80 (2d Cir. 2004) ("There is a critical distinction between the notice requirements of Rule 8(a) and the requirement, under Rule 12(b)(6), that a plaintiff state a claim upon which relief can be granted."); *Phelps v. Kapnolas*, 308 F.3d 180, 187 (2d Cir. 2002) ("Of course, none of this is to say that a court should hesitate to dismiss a complaint when the plaintiff's allegation . . . fails as a matter of law.") (citation omitted); *Kittay v. Kornstein*, 230 F.3d 531, 541 (2d Cir. 2000) (distinguishing between a failure to meet Rule 12[b][6]'s requirement of stating a cognizable claim and Rule 8[a]'s requirement of disclosing sufficient information to put defendant on fair notice); *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 379 F. Supp.2d 348, 370 (S.D.N.Y. 2005) ("Although Rule 8 does not require plaintiffs to plead a theory of causation, it does not protect a legally insufficient claim [under Rule 12(b)(6)].") (citation omitted); *Util. Metal Research & Generac Power Sys.*, 02-CV-6205, 2004 U.S. Dist. LEXIS 23314, at *4-5 (E.D.N.Y. Nov. 18, 2004) (distinguishing between the legal sufficiency of the cause of action under Rule 12[b][6] and the sufficiency of the complaint under Rule 8[a]); *accord*, *Straker v. Metro Trans. Auth.*, 331 F. Supp.2d 91, 101-102 (E.D.N.Y. 2004); *Tangorre v. Mako's, Inc.*, 01-CV-4430, 2002 U.S. Dist. LEXIS 1658, at *6-7 (S.D.N.Y. Jan. 30, 2002) (identifying two sorts of arguments made on a Rule 12[b][6] motion--one aimed at the sufficiency of the pleadings under Rule 8[a], and the other aimed at the legal sufficiency of the claims).

rests."[3]  The purpose of this rule is to "facilitate a proper decision on the merits."[4]  A complaint that fails to comply with this rule "presents far too a heavy burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of [plaintiff's] claims."[5]

The Supreme Court has long characterized this pleading requirement under Rule 8(a)(2) as "simplified" and "liberal," and has repeatedly rejected judicially established pleading requirements that exceed this liberal requirement.[6]  However, it is well established that even this liberal notice pleading standard "has its limits."[7]  As a result, several Supreme Court decisions, and Second Circuit decisions, exist holding that a pleading has failed to meet this liberal notice pleading standard.[8]

---

[3]     *Dura Pharmaceuticals, Inc. v. Broudo*, 125 S. Ct. 1627, 1634 (2005) (holding that the complaint failed to meet this test) (quoting *Conley*, 355 U.S. at 47); *see also Swierkiewicz*, 534 U.S. at 512 (quoting *Conley*, 355 U.S. at 47); *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168 (1993) (quoting *Conley*, 355 U.S. at 47).

[4]     *See Swierkiewicz*, 534 U.S. at 514 (quoting *Conley*, 355 U.S. at 48).

[5]     *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996) (McAvoy, J.), *aff'd*, 113 F.3d 1229 (2d Cir. 1997) (unpublished table opinion).  Consistent with the Second Circuit's application of § 0.23 of the Rules of the U.S. Court of Appeals for the Second Circuit, I cite this unpublished table opinion, not as precedential authority, but merely to show the case's subsequent history.  *See, e.g.*, *Photopaint Technol., LLC v. Smartlens Corp.*, 335 F.3d 152, 156 (2d Cir. 2003) (citing, for similar purpose, unpublished table opinion of *Gronager v. Gilmore Sec. & Co.*, 104 F.3d 355 [2d Cir. 1996]).

[6]     *See, e.g.*, *Swierkiewicz*, 534 U.S. at 513-514 (noting that "Rule 8(a)(2)'s simplified pleading standard applies to all civil actions, with limited exceptions [including] averments of fraud or mistake.").

[7]     2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003).

[8]     *See, e.g.*, *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-1974 (2007) (pleading did not meet Rule 8[a][2]'s liberal requirement), *accord*, *Dura Pharmaceuticals*, 125

4

Most notably, in the recent decision of *Bell Atlantic Corporation v. Twombly*, the

Supreme Court, in reversing an appellate decision holding that a complaint had stated a claim

upon which relief could be granted, "retire[d]" the famous statement by the Court in *Conley v.

Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state

a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his

claim which would entitle him to relief."  127 S. Ct. 1955, 1968-1969 (2007).[9]  Rather than

turning on the conceivability of an actionable claim, the Court clarified, the Rule 8 standard turns

on the "plausibility" of an actionable claim.  *Id*. at 1965-1974.  More specifically, the Court held

that, for a plaintiff's complaint to state a claim, his "[f]actual allegations must be enough to raise

a right to relief above the speculative level [to a plausible level]" assuming, of course, that all the

allegations in the complaint are true.  *Id*. at 1965 [citations omitted].  What this means, on a

_____

S. Ct. at 1634-1635, *Christopher v. Harbury*, 536 U.S. 403, 416-422 (2002), *Freedom Holdings,
Inc. v. Spitzer*, 357 F.3d 205, 234-235 (2d Cir. 2004), *Gmurzynska v. Hutton*, 355 F.3d 206, 208-
209 (2d Cir. 2004).  Several unpublished decisions exist from the Second Circuit affirming the
Rule 8(a)(2) dismissal of a complaint after *Swierkiewicz*.  *See, e.g.*, *Salvador v. Adirondack Park
Agency of the State of N.Y.*, No. 01-7539, 2002 WL 741835, at *5 (2d Cir. Apr. 26, 2002)
(affirming pre-*Swierkiewicz* decision from Northern District of New York interpreting Rule
8[a][2]).  Although these decisions are not themselves precedential authority, *see* Rules of the
U.S. Court of Appeals for the Second Circuit, § 0.23, they appear to acknowledge the continued
precedential effect, after *Swierkiewicz*, of certain cases from within the Second Circuit
interpreting Rule 8(a)(2).  *See Khan v. Ashcroft*, 352 F.3d 521, 525 (2d Cir. 2003) (relying on
summary affirmances because "they clearly acknowledge the continued precedential effect" of
*Domond v. INS*, 244 F.3d 81 [2d Cir. 2001], after that case was "implicitly overruled by the
Supreme Court" in *INS v. St. Cyr*, 533 U.S. 289 [2001]).

[9]      The Court in *Twombly* further explained: "The phrase is best forgotten as an
incomplete, negative gloss on an accepted pleading standard: once a claim has been adequately
stated, it may be supported by showing any set of facts consistent with the allegations in the
complaint. . . .  *Conley*, then, described the breadth of opportunity to prove what an adequate
complaint claims, not the minimum standard of adequate pleading to govern a complaint's
survival."  *Twombly*, 127 S. Ct. at 1969.

practical level, is that there must be "plausible grounds to infer [actionable conduct]," or, in other words, "enough fact to raise a reasonable expectation that discovery will reveal evidence of [actionable conduct]." *Id.*

Having said that, it should be emphasized that, "[i]n reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor."[10] "This standard is applied with even greater force where the plaintiff alleges civil rights violations or where the complaint is submitted *pro se*."[11] In other words, while all pleadings are to be construed liberally, *pro se* civil rights pleadings are to be construed with an *extra* degree of liberality. Indeed, "courts must construe *pro se* pleadings broadly, and interpret them to raise the strongest arguments that they suggest."[12] Moreover, when addressing a *pro se* complaint, generally a district court "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."[13] Of course, granting a *pro se* plaintiff an opportunity to amend is not required where the plaintiff has already been given a chance to

---

[10]     *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (affirming grant of motion to dismiss) (citation omitted); *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994).

[11]     *Hernandez*, 18 F.3d at 136 (citation omitted); *see also Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir. 2003) (citations omitted); *Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 619 (2d Cir. 1999) (citation omitted).

[12]     *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000) (finding that plaintiff's conclusory allegations of a due process violation were insufficient) (internal quotation and citation omitted).

[13]     *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (internal quotation and citation omitted); *see also* Fed. R. Civ. P. 15(a) (leave to amend "shall be freely given when justice so requires").

amend his pleading.[14]

Having said all of that, when a plaintiff is proceeding *pro se*, "all normal rules of pleading are not absolutely suspended."[15]  For example, an opportunity to amend should be denied where "the problem with [plaintiff's] causes of action is substantive" such that "[b]etter pleading will not cure it."[16]  In addition, "[t]here are circumstances where an overly litigious inmate, who is quite familiar with the legal system and with pleading requirements, may not be afforded [the]

---

[14]     *Muniz v. Goord*, 04-CV-0479, 2007 WL 2027912, at *2, n.14 (N.D.Y.Y. July 11, 2007) (McAvoy, J., adopting report-recommendation of Lowe, M.J.); *Richards v. Goord*, 04-CV-1433, 2007 WL 201109, at *5, n.34 (N.D.N.Y. Jan. 23, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.); *Ariola v. Onondaga County Sheriff's Dept.*, 04-CV-1262, 2007 WL 119453, at *2, n.13 (N.D.N.Y. Jan. 10, 2007) (Hurd, J., adopting report-recommendation of Lowe, M.J.); *Collins v. Fed. Bur. of Prisons*, 05-CV-0904, 2007 WL 37404, at *4, n.30 (N.D.N.Y. Jan. 4, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.); *Goros v. Cent. Office Review Comm.*, 03-CV-0407, 2006 WL 2794415, at *5, n.18 (N.D.N.Y. Sept., 26, 2006) (Sharpe, J., adopting report-recommendation of Lowe, M.J.); *Williams v. Weaver*, 03-CV-0912, 2006 WL 2799417, at *4, n.16 (N.D.N.Y. Sept. 26, 2006)  (Kahn, J., adopting report-recommendation of Lowe, M.J.).

[15]     *Stinson v. Sheriff's Dep't of Sullivan Cty.*, 499 F. Supp. 259, 262 & n.9 (S.D.N.Y. 1980); *accord, Standley v. Dennison*, 05-CV-1033, 2007 WL 2406909, at *6, n.27 (N.D.N.Y. Aug. 21, 2007) (Sharpe, J., adopting report-recommendation of Lowe, M.J.); *Muniz v. Goord*, 04-CV-0479, 2007 WL 2027912, at *2 (N.D.Y.Y. July 11, 2007) (McAvoy, J., adopting report-recommendation of Lowe, M.J.); *DiProjetto v. Morris Protective Serv.*, 489 F. Supp.2d 305, 307 (W.D.N.Y. 2007); *Cosby v. City of White Plains*, 04-CV-5829, 2007 WL 853203, at *3 (S.D.N.Y. Feb. 9, 2007); *Lopez v. Wright*, 05-CV-1568, 2007 WL 388919, at *3, n.11 (N.D.N.Y. Jan. 31, 2007) (Mordue, C.J., adopting report-recommendation of Lowe, M.J.); *Richards v. Goord*, 04-CV-1433, 2007 WL 201109, at *5 (N.D.N.Y. Jan. 23, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.); *Ariola v. Onondaga County Sheriff's Dept.*, 04-CV-1262, 2007 WL 119453, at *2, n.13 (N.D.N.Y. Jan. 10, 2007) (Hurd, J., adopting report-recommendation of Lowe, M.J.); *Collins v. Fed. Bur. of Prisons*, 05-CV-0904, 2007 WL 37404, at *4 (N.D.N.Y. Jan. 4, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.).

[16]     *Cuoco*, 222 F.3d at 112 (finding that repleading would be futile) (citation omitted); *see also Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.") (affirming, in part, dismissal of claim with prejudice) (citation omitted).

special solicitude" or status that is normally afforded *pro se* litigants.[17]

### B.   Revocation of Special Status of Overly Litigious *Pro Se* Civil Rights Litigants

Generally, the rationale for revoking the special status of overly litigious *pro se* civil

rights litigants (at least in the Second Circuit) is not that the *pro se* litigant should be punished

but that his excessive litigiousness demonstrates his *experience*, the lack of which is the reason

for conferring the special status upon *pro se* litigants in the first place.[18]   Moreover, permitting

---

[17]      *Smith v. Burge*, 03-CV-0955, 2006 WL 2805242, at *3 & n.3 (N.D.N.Y. Sept. 28, 2006) (Kahn, J., adopting report-recommendation of Lowe, M.J.) [citations omitted]; *see also Johnson v. Eggersdorf*, 8 F. App'x 140, 143 (2d Cir. 2001) (unpublished opinion), *aff'g*, 97-CV-0938, Decision and Order (N.D.N.Y. filed May 28, 1999) (Kahn, J.), *adopting*, Report-Recommendation, at 1, n.1 (N.D.N.Y. filed Apr. 28, 1999) (Smith, M.J.); *Johnson v. C. Gummerson*, 201 F.3d 431, at *2 (2d Cir. 1999) (unpublished opinion), *aff'g*, 97-CV-1727, Decision and Order (N.D.N.Y. filed June 11, 1999) (McAvoy, J.), *adopting*, Report-Recommendation (N.D.N.Y. filed April 28, 1999) (Smith, M.J.); *Davidson v. Flynn*, 32 F.3d 27, 31 (2d Cir. 1994).

[18]      **Second Circuit Cases:** *See, e.g., Johnson v. Eggersdorf*, 8 F. App'x 140, 143 (2d Cir. 2001) (unpublished opinion), *aff'g*, 97-CV-0938, Decision and Order (N.D.N.Y. filed May 28, 1999) (Kahn, J.), *adopting*, Report-Recommendation, at 1, n.1 (N.D.N.Y. filed Apr. 28, 1999) (Smith, M.J.); *Johnson v. C. Gummerson*, 201 F.3d 431, at *2 (2d Cir. 1999) (unpublished opinion), *aff'g*, 97-CV-1727, Decision and Order (N.D.N.Y. filed April 28, 1999) (McAvoy, J.), *adopting*, Report-Recommendation (N.D.N.Y. filed April 28, 1999) (Smith, M.J.); *Davidson v. Flynn*, 32 F.3d 27, 31 (2d Cir. 1994).
    **District Court Cases:** *See, e.g., Standley v. Dennison*, 05-CV-1033, 2007 WL 2406909, at *7-8 (N.D.N.Y. Aug. 21, 2007) (Sharpe, J., adopting Report-Recommendation of Lowe, M.J.); *Edwards v. Selsky*, 04-CV-1054, 2007 WL 748442, at *2-3 (N.D.N.Y. March 6, 2007) (Mordue, C.J., adopting Report-Recommendation of Lowe, M.J.); *Rolle v. Garcia*, 04-CV-0312, 2007 WL 672679, at *4 (N.D.N.Y. Feb. 28, 2007) (Kahn, J., adopting Report-Recommendation of Lowe, M.J.); *Mora v. Bockelmann*, 03-CV-1217, 2007 WL 603410, at *4 (N.D.N.Y. Feb. 22, 2007) (Mordue, C.J., adopting Report-Recommendation of Homer, M.J.); *Brown v. Goord*, 04-CV-0785, 2007 WL 607396, at *2-3 (N.D.N.Y. Feb. 20, 2007) (McAvoy, J., adopting Report-Recommendation of Lowe, M.J.); *Mitchell v. Harriman*, 04-CV-0937, 2007 WL 499619, at *3 (N.D.N.Y. Feb. 13, 2007) (Sharpe, J., adopting Report-Recommendation of Homer, M.J.); *Sledge v. Kooi*, 04-CV-1311, 2007 WL 951447, at *3-4 (N.D.N.Y. Feb. 12, 2007) (Lowe, M.J.), *adopted by* 2007 WL 969576 (N.D.N.Y. March 28, 2007) (McAvoy, J.); *Gill v. Pidylpchak*, 02-CV-1460, 2006 WL 3751340, at *2 (N.D.N.Y. Dec. 19, 2006) (Scullin, J., adopting Report-Recommendation of Treece, M.J.); *Saunders v. Ricks*, 03-CV-0598, 2006 WL

experienced *pro se* litigants to retain their special status would tilt the scales of justice unfairly in favor of the *pro se* litigant and against his opponents.[19]    As observed by Judge Irving R. Kaufman, of the Second Circuit, regarding an active *pro se* litigant nearly 45 years ago:

> He comes before this Court wearing the cloak of a *pro se* applicant, and seeks to extract from us the solicitude ordinarily afforded one appearing without counsel.  But this should not shield him from rebuke when merited.  He is an intelligent, able and sophisticated litigant, who is no stranger to this Court, having appeared frequently in his own behalf both in the District Court and the Court of Appeals.  We would expect that one possessed of his background would be conscious of the outer limits of forceful advocacy and fully aware when his acts transgress those limits.  Moreover, we are not to be manipulated by resourceful but meritless moves . . . . [which] serve only to distract us

---

3051792, at *2 (N.D.N.Y. Oct. 18, 2006) (Hurd, J., adopting Report-Recommendation of Lowe, M.J.); *Gill v. Frawley*, 02-CV-1380, 2006 WL 1742738, at *3 (N.D.N.Y. June 22, 2006) (McAvoy, J., adopting Report-Recommendation of Lowe, M.J.); *Davidson v. Talbot*, 01-CV-0473, 2005 U.S. Dist. LEXIS 39576, at *20 (N.D.N.Y. March 31, 2005) (Treece, M.J.), *adopted by* 2006 U.S. Dist. LEXIS 47554 (N.D.N.Y. July 5, 2006) (Scullin, J.); *Gill v. Riddick*, 03-CV-1456, 2005 U.S. Dist. LEXIS 5394, at *7 (N.D.N.Y. March 31, 2005) (Treece, M.J.); *Yip v. Bd. of Tr. of SUNY*, 03-CV-0959, 2004 WL 2202594, at *3 (W.D.N.Y. Sept. 29, 2004); *Davidson v. Dean*, 204 F.R.D. 251, 257 & n.5 (S.D.N.Y. 2001); *Santiago v. C.O. Campisi*, 91 F. Supp.2d 665, 670 (S.D.N.Y. 2000); *McGann v. U.S.*, 98-CV-2192, 1999 WL 173596, at *2 (S.D.N.Y. March 29, 1999); *Hussein v. Pitta*, 88-CV-2549, 1991 WL 221033, at *4 (S.D.N.Y. Oct. 11, 1991).

[19]       *Standley*, 2007 WL 2406909, at *7 & n.34; *Edwards*, 2007 WL 748442, at *2; *Sledge*, 2007 WL 951447, at *3; *see also Hussein*, 1991 WL 221033, at *4 (concluding that experienced *pro se* litigant should no longer be afforded special leniency because continuing to afford him such leniency would be unfair to "numerous attorneys," whose time and energy had already been consumed by plaintiff); Jessica Case, "Pro se Litigants at the Summary Judgment Stage: Is Ignorance of the Law an Excuse?" 90 *Ky. L.J.* 701, 735-740 (Spring 2001) (discussing how extending special leniency to *pro se* litigants in some circumstances "distorts the adversarial system and the role of trial judges") [citing cases]; Julie M. Bradlow, "Procedural Due Process Rights of *Pro se* Civil Litigants," 55 *U. Chi. L. Rev.* 659, 672 (Spring 1988) (discussing how "extending too much procedural leniency to a *pro se* litigant risks undermining the impartial role of the judge in the adversary system") [citations omitted].

from important judicial business.[20]

Courts relying on the "experience" rationale for revoking a *pro se* litigant's special status look at a variety of factors in assessing whether or not the *pro se* litigant is experienced.  Most often, these factors include (1) the number of previous federal court actions filed, (2) the number of previous federal court appeals filed, (3) the number of previous state court actions filed, (4) the number of previous state court appeals filed, and (5) the recency or simultaneity of the actions and/or appeals.[21]

There is, of course, no formula for determining "How many is too many?"  However, *generally*, if a *pro se* litigant has filed a dozen or more actions and/or appeals before the date of the decision in question, it is quite possible that he will be deemed to be "experienced."[22]

---

[20]     *Raitport v. Chem. Bank*, 74 F.R.D. 128, 133 (S.D.N.Y. 1977) [citing *Ackert v. Bryan*, No. 27240 (2d Cir. June 21, 1963) (Kaufman, J., concurring)].

[21]     *See, e.g., Eggersdorf*, 8 F. App'x at 143; *Gummerson*, 201 F.3d at *2; *Flynn*, 32 F.3d at 31; *Standley*, 2007 WL 2406909, at *7 & n.35; *Frawley*, 2006 WL 1742738, at *3 & n.2; *Talbot*, 2005 U.S. Dist. LEXIS 39576, at *18-20 & n.10; *Riddick*, 2005 U.S. Dist. LEXIS 5394, at *7 & n.3; *Dean*, 204 F.R.D. at 257; *Santiago*, 91 F. Supp. 2d at 670; *McGann*, 1999 WL 173596, at *2, 8-10; *McClellan*, 1996 U.S. Dist. LEXIS 8164, at *3-4 & n.3; *Brown*, 1995 U.S. Dist. LEXIS 213, at *2 n.1.

[22]     *See, e.g., Eggersdorf*, 8 F. App'x at 143 (denying leniency to *pro se* civil rights inmate based on fact that at one point plaintiff had ***twelve*** simultaneously pending lawsuits in Northern District alone); *Gummerson*, 201 F.3d at *2 (denying leniency to *pro se* civil rights inmate based on fact that plaintiff had ***twelve*** simultaneously pending lawsuits in Northern District alone); *Standley*, 2007 WL 2406909, at *8 (denying leniency to *pro se* civil rights inmate based on fact that plaintiff had previously filed ***sixteen*** federal or state court actions or appeals); *Talbot*, 2005 U.S. Dist. LEXIS 39576, at *18-20 & n.10 (denying leniency to *pro se* civil rights inmate based on fact that plaintiff had filed ***twenty*** lawsuits in Northern District alone); *Riddick*, 2005 U.S. Dist. LEXIS 5394, at *7 & n.3 (denying leniency to *pro se* civil rights inmate based on fact that plaintiff had filed ***twenty*** lawsuits in Northern District alone).  Interestingly, this *de facto* "rule of twelve" is consistent with the California Code of Civil Procedure, which declines to extend a reduction in small-claims-court filing fees to those litigants who have filed more than 12 small-claims lawsuits in the state within the previous 12 months.  *See* Cal. Civ. Proc. § 116.230

Granted, there are some cases revoking the special status of a *pro se* litigant who has filed *fewer* than a dozen cases.[23]  However, there appear to be *more* cases refusing to revoke the special status of a *pro se* litigant who has filed fewer than a dozen cases.[24]

One reason for this array of cases is that, in determining whether or not a *pro se* litigant is "experienced," courts sometimes consider additional factors, such as (1) the quality of the *pro se* litigant's submissions to the Court (e.g., whether they are typed, cogent, supported by applicable

---

(2006).

[23]     *See*, *e.g.*, *Santiago*, 91 F. Supp. 2d at 670 (denying leniency to *pro se* civil rights inmate based on fact that at one point plaintiff had **ten** lawsuits pending in Southern District); *Saunders v. Ricks*, 03-CV-0598, 2006 WL 3051792, at *2 & n.11 (N.D.N.Y. Oct. 18, 2006) (Hurd, J., adopting Report-Recommendation of Lowe, M.J.) (denying leniency to *pro se* civil rights inmate who had previously filed **eight** federal court actions or appeals); *McClellan*, 1996 U.S. Dist. LEXIS 8164, at *3-4 & n.3 (denying leniency to *pro se* civil rights inmate based on fact that inmate had filed **seven** previous lawsuits against prison officials); *Brown*, 1995 U.S. Dist. LEXIS 213, at *2 n.1 (denying leniency to *pro se* civil rights inmate based on fact that plaintiff had **seven** lawsuits pending in Western District).

[24]     *See*, *e.g.*, *McEachin v. Faruki*, 03-CV-1442, 2006 WL 721570, at *2 n.3 (N.D.N.Y. March 20, 2006) (refusing to deny leniency to *pro se* civil rights inmate who had filed **eleven** other federal lawsuits since 2000); *Pritchett v. Portoundo*, 03-CV-0378, 2005 WL 2179398, at *2 n.3 (N.D.N.Y. Sept. 9, 2005) (refusing to deny leniency to *pro se* civil rights inmate who had filed **eight** other federal lawsuits since 1996); *Burke v. Seitz*, 01-CV-1396, 2006 WL 383513, at *2 n.5 (N.D.N.Y. Feb. 13, 2006) (refusing to deny leniency to *pro se* civil rights inmate who had filed **six** other federal lawsuits in previous nine years); *Ariola v. Onondaga County Sheriff's Dept.*, 04-CV-1262, 2007 WL 119453, at *3 (N.D.N.Y. Jan. 10, 2007) (Hurd, J., adopting Report-Recommendation of Lowe, M.J.) (refusing to deny leniency to *pro se* civil rights inmate who had previously filed **five** actions or appeals in federal or state court); *Smith*, 2006 WL 2805242, at *3 & n.4 (refusing to deny leniency to *pro se* civil rights inmate based on his filing of **five** other lawsuits); *Abbas v. Senkowski*, 03-CV-0476, 2005 WL 2179426, at *2 n.4 (N.D.N.Y. Sept. 9, 2005) (continuing to afford special status to *pro se* litigant despite his litigation experience due to his having filed **three** other federal actions since 1997); *Loren v. Feerick*, 97-CV-3975, 1997 WL 441939, at *1 & n.9 (S.D.N.Y. Aug. 6, 1997) (continuing to afford special status to *pro se* litigant despite his litigation experience due to his having filed **three** previous actions in state court regarding current matter, and two previous actions in district court regarding current matter).

affidavits, exhibits, and/or memoranda of law, etc),[25] (2) whether or not the *pro se* litigant has been victorious (or partially victorious) in any of his previous actions or appeals,[26] and (3) whether or not the *pro se* litigant has received sufficient formal legal training to familiarize him with legal procedure and terminology.[27]

---

[25]    *See*, *e.g.*, *Saunders*, 2006 WL 3051792, at *2 (in deciding whether *pro se* plaintiff should be denied special solicitude, considering the fact that, among other things, "with regard to the current action, . . . the motion papers that [p]laintiff has submitted over the past several years have often been fairly good–being typed, being accompanied by affidavits, and containing legal memoranda, exhibits, etc."), *accord*, *Standley*, 2007 WL 2406909, at *8.

[26]    *See*, *e.g., Standley*, 2007 WL 2406909, at *8 & n.45 (in deciding whether *pro se* plaintiff should be denied special solicitude, considering the fact that plaintiff had been victorious or partially victorious in at least four of his previous actions or appeals); *Saunders*, 2006 WL 3051792, at *2 (in deciding whether *pro se* plaintiff should be denied special solicitude, considering the fact that plaintiff had settled two of his previous six federal court actions, receiving $25,000 in exchange for his agreement to voluntarily dismiss the actions, and the fact that some of plaintiff's motions in his many actions have been granted); *Ab v. Sekendur*, 03-CV-4723, 2004 WL 2434220, at *5 (N.D. Ill. Oct. 28, 2004) (considering, during decision of whether *pro se* plaintiff should be denied leniency normally afforded inexperienced *pro se* litigants, fact that "[plaintiff] has successfully applied for and received . . . [a] patent, and as the record in this case indicates, he engaged in lengthy business negotiations with Anoto and various other corporations").

[27]    *See*, *e.g.*, *Walker v. Suburban Hosp. Ass'n*, No. 90-1506, 1991 U.S. App. LEXIS 4049, at *3, n.2 (4th Cir. March 13, 1991) ("Walker is not due the lenient treatment accorded pro se litigants.  Walker has . . . a law degree. . . .  Certainly, the policies underlying the Court's admonitions to accord pro se litigants an understanding view of their pleadings and conduct do not have force in this context."); *Heimbaugh v. San Francisco*, 591 F. Supp. 1573, 1577 (N.D. Cal. 1984) ("While plaintiff appears [pro se], he is schooled in the law, having recently completed law school . . . .  There is every reason to hold him to the certification he made by signing the pleadings he has filed in this action."); *Pham v. U.S.*, 317 F.3d 178, 186-188 (2d Cir. 2003) (relying on fact that *pro se* prisoner was "not trained in the law," and that he was "untutored," when explaining reason for extending him special solicitude under the circumstances); *Iwachiw v. N.Y. City Bd. of Educ.*, 2007 U.S. Dist. LEXIS 8040, at *12 (E.D.N.Y. Feb. 5, 2007) ("This policy of liberally construing pro se submissions is driven by the understanding that implicit in the right of self-representation is an obligation on the part of the court to make reasonable allowances to protect pro se litigants from inadvertent forfeiture of important rights because of their lack of legal training.") [internal quotation marks and citations omitted]; *cf.* John C. Rothermich, "Ethical and Procedural Implications of "Ghostwriting" for

12

Here, Plaintiff has filed at least **twenty-one** other federal or state court actions or appeals.

Specifically, Plaintiff has filed at least **five** other federal district court actions.[28]  Plaintiff has filed

at least **ten** federal court appeals.[29]  Plaintiff has filed at least **seven** state court actions.[30]  Plaintiff

---

*Pro Se* Litigants: Toward Increased Access to Civil Justice," 67 *Fordham L. Rev.* 2687, 2697 (Apr. 1999) (arguing that, when the papers of a *pro se* litigant are "ghostwritten" by a legal assistant, the "special leniency" normally afforded to *pro se* litigants is "unwarranted") [citations omitted], *accord*, *Saunders*, 2006 WL 3051792, at *2, n.15.

[28]     These five federal district court actions are as follows: (1) *Koehl v. Greene*, 05-CV-0582 (N.D.N.Y.) (DNH/DEP) (prisoner civil rights action); (2) *Koehl v. Warden, Clinton Corr. Facil.*, 00-CV-6499 (S.D.N.Y.) (habeas corpus petition); (3) *Koehl v. Rowe*, 96-CV-1001 (E.D.N.Y.) (prisoner civil rights action, settled on or about 6/13/02 for payment to Plaintiff of $35,000 plus $7,419.41 in expenses); (4) *Koehl v. Dalsheim*, 94-CV-3351 (S.D.N.Y.) (prisoner civil rights action, settled on or about 5/20/99 for payment to Plaintiff of $25,000); and (5) *Koehl v. Dalsheim*, 94-CV-4230 (S.D.N.Y.) (prisoner civil rights action).

[29]     These ten federal court appeals are as follows: (1) *Koehl v. Greene*, No. 05-6868, Mandate (2d Cir., filed 8/16/07) (denying Plaintiff's appeal from district court decision in prisoner civil rights action); (2) *Koehl v. Greene*, No. 06-0838, Mandate (2d Cir., filed 11/27/06) (denying Plaintiff's appeal from district court decision in prisoner civil rights action); (3) *Koehl v. Warden, Clinton Corr. Facil.*, No. 05-6562, Mandate (2d Cir., filed 8/31/06) (denying Plaintiff's appeal from district court decision in habeas corpus petition); (4) *Koehl v. Warden, Clinton Corr. Facil.*, No. 05-6562, Mandate (2d Cir., filed 1/5/06) (denying Plaintiff's appeal from district court decision in habeas corpus petition); (5) *Koehl v. Warden, Clinton Corr. Facil.*, No. 04-1293, Mandate (2d Cir., filed 5/20/04) (denying Plaintiff's appeal from district court decision in habeas corpus petition); (6) *Koehl v. Dalsheim*, No. 95-2395, Order (2d Cir., filed 5/31/96) (granting in part, and denying in part, Plaintiff's appeal from district court decision in prisoner civil rights action, partially reversing that decision), *see also Koehl v. Dalsheim*, 85 F.3d 86 (2d Cir. 1996); (7) *Koehl v. New York*, 127 S. Ct. 965 (2007) (denying Plaintiff's petition for writ of certiorari to New York State Appellate Division, Second Department); (8) *Koehl v. New York*, 127 S. Ct. 464 (2006) (denying Plaintiff's petition for writ of certiorari to New York State Appellate Division, Second Department); (9) *Koehl v. Greene*, 127 S. Ct. 68 (2006) (denying Plaintiff's petition for writ of certiorari to New York State Appellate Division, Third Department); and (10) *Koehl v. Senkowski*, 543 U.S. 991 (2004) (denying Plaintiff's petition for writ of certiorari to Second Circuit Court of Appeals).

[30]     These seven state court actions consist of the four underlying New York State Supreme Court actions referenced below in note 31 of this Report-Recommendation, as well as the following: (1) *Koehl v. Darwin*, Index No. 2007-010478 (N.Y.S. Sup. Ct., Washington County, filed 4/5/07) (unspecified proceeding), *see also Koehl v. Darwin*, Index. No. 2007-

has filed at least *four* state court appeals.[31]  Plaintiff has had at least *five* victories, or partial

victories, in these actions and appeals.[32]  Two of these victories yielded the payment of *$67,419*

to Plaintiff pursuant to settlement agreements.[33]  Not surprisingly, Plaintiff's filings in this action

have been quite good, always being clear, organized and cogent, and almost always being typed

and supported by exhibits and/or declarations.  (*See* Dkt. Nos. 1, 2, 3, 15, 16, 20, 29, 31, 34,

---

010533 (N.Y.S. Sup. Ct., Washington County, filed 4/18/07) (Article 78 proceeding); (2) *Koehl v. Garfield*, Index No. 2006-008545 -010533 (N.Y.S. Sup. Ct., Washington County, filed 3/1/06) (action for professional malpractice against attorney); and (3) *Koehl v. Woods*, Index. No. 2007-0591, 2007 WL 1988484 (N.Y.S. Sup. Ct., Franklin County, July 10, 2007) (Article 78 proceeding).

[31]    These four state court appeals are as follows: (1) *Koehl v. Mirza*, 832 N.Y.S.2d 829 (N.Y.S. App. Div., 3d Dept., 2007) (appeal from decision by N.Y. State Supreme Court, Clinton County, in prisoner civil rights action); (2) *Koehl v. Levy*, 831 N.Y.S.2d 727 (N.Y.S. App. Div., 2d Dept., 2007) (appeal from decision by N.Y. State Supreme Court, Kings County, in Article 78 proceeding); (3) *Koehl v. Greene*, 808 N.Y.S.2d 914 (N.Y.S. App. Div., 3d Dept., 2006) (appeal from decision by N.Y. State Supreme Court, Washington County, in Article 78 proceeding); (4) *Koehl v. Senkowski*, 779 N.Y.S.2d 851 (N.Y.S. App. Div., 3d Dept., 2004) (appeal from decision by N.Y. State Supreme Court, Clinton County, in Article 78 proceeding), *appeal denied*, 788 N.Y.S.2d 688 (N.Y. 2004).

[32]    These victories, or partial victories, were as follows: (1) *Koehl v. Rowe*, 96-CV-1001, 1997 WL 724647 (E.D.N.Y. Nov. 14, 1997) (Memorandum and Order denying defendants' motion to dismiss Plaintiff's Complaint for failure to state a claim); (2) *Koehl v. Rowe*, 96-CV-1001 (E.D.N.Y.) (prisoner civil rights action, settled on or about 6/13/02 for payment to Plaintiff of $35,000 plus $7,419.41 in expenses); (3) *Koehl v. Dalsheim*, No. 95-2395, Order (2d Cir., filed 5/31/96) (granting in part, and denying in part, Plaintiff's appeal from district court decision in prisoner civil rights action, partially reversing that decision, which had dismissed Plaintiff's Complaint), *see also Koehl v. Dalsheim*, 85 F.3d 86 (2d Cir. 2006); (4) *Koehl v. Dalsheim*, 94-CV-3351 (S.D.N.Y.) (prisoner civil rights action, settled on or about 5/20/99 for payment to Plaintiff of $25,000); and (5) *Koehl v. Greene*, 05-CV-0582 (N.D.N.Y.) (DNH/DEP) (partially granting Plaintiff's motion to compel on 7/7/06, and partially granting Plaintiff's motion for reconsideration on 6/14/07, in prisoner civil rights action).

[33]    *Id*.

36.)[34]

Under the circumstances, I find that Plaintiff's special status as a *pro se* litigant should be revoked for the remainder of this action.  Again, continuing to afford him such special status would be unnecessary (and unfairly prejudicial to Defendants).

## II.     BACKGROUND

### A.     Allegations of Plaintiff's Amended Complaint

Liberally construed, Plaintiff's Amended Complaint sets forth the following factual allegations against Defendant Dalsheim.

Between May 1992 and May 1994, Plaintiff was repeatedly transferred between the City of New York Department of Correction's Rikers Island Facility and the New York State DOCS' Downstate C.F.  During this two-year period of time, Plaintiff repeatedly submitted sick-call requests at Downstate C.F., complaining about health problems (including headaches, nausea, eye irritation, and respiratory problems) that he was experiencing as a result of being exposed to second-hand smoke in Downstate C.F.'s poorly ventilated common areas.  However, the medical staff at Downstate C.F. only prescribed Plaintiff pain medication for his headaches.  During this time period, Plaintiff also repeatedly spoke to Defendant Dalsheim about these health problems, requesting that the housing areas at Downstate C.F. be made "smoke free zones," or at least that he be transferred to a housing area where smoking was prohibited.  However, Defendant Dalsheim repeatedly ignored Plaintiff's health problems and denied his request.  In May 2002, Plaintiff was transferred from Downstate C.F., and was not subsequently transferred back there.

---

[34]     As a result, various of Plaintiff's requests have been granted by the Court.  (*See* Dkt. Nos. 6, 15.)

(*See generally* Dkt. No. 16, ¶¶ II.D., IV.G. [Plf.'s Am. Compl.].)

### B.    Parties' Legal Arguments on Defendants' Motion to Dismiss

In their memorandum of law, Defendants argue that Plaintiff's claim against Defendant Dalsheim should be dismissed because it is barred by the applicable three-year statute of limitations, and because the events giving rise to that claim occurred between May 1992 and May 1994.  (Dkt. No. 27, Part 2, at 3-4 [Defs.' Mem. of Law].)  More specifically, Defendants argue that (1) according to Plaintiff's own factual allegations, he was, during the time period of May 1992 to May 1994, clearly aware of the alleged harm in question since he complained about it to both the medical staff at Downstate C.F. and to the Superintendent of Downstate C.F., Defendant Dalsheim, and (2) Plaintiff's factual allegations do not indicate that Defendant Dalsheim engaged in any fraud that prevented Plaintiff from learning of the alleged harm in question.  (*Id.*)

In his response, Plaintiff asserts four arguments.  First, he argues that his claim against Defendant Dalsheim is not barred by the applicable three-year statute of limitations because of the availability of the "continuing-violation doctrine" under the circumstances.  (Dkt. No. 29 at 2-3 [Plf.'s Response Mem. of Law].)  More specifically, Plaintiff argues that

> [t]he gravamen [sic] of Plaintiff's claim is that Dalsheim and the DOCS defendants continuously, systematically, and consciously disregarded [Plaintiff's] serious medical conditions from 1992 through the present, via DOCS policy and/or custom.  Plaintiff, a prisoner of the State[,] was not free to escape the onslaught of exposure to second[-]hand smoke or seek treatment elsewhere. . . .  Contrary to Dalsheim's contention that plaintiff's cause of action accurred [sic] in 1994, and is therefore time barred, plaintiff was continuously harmed by Dalsheim, and [Plaintiff's] complaints were systematically and callously disregarded by the culpable recklessness of Dalsheim. . . . Dalsheim systematically and callously exposed plaintiff to be overly exposed to second[-]hand smoke, via custom or policy of the DOCS.

(*Id*. at 2-3, 5.)

Second, Plaintiff argues that, liberally construing his claim against Defendant Dalsheim, and accepting as true all of Plaintiff's factual allegations setting forth that claim, and interpreting that claim to raise the strongest argument it suggests due to Plaintiff's special status as a *pro se* civil rights litigant, the Court cannot dismiss that claim under Rule 8's modest "notice pleading standard," because it does not appear beyond doubt that Plaintiff can prove no set of facts in support of his claim that would entitled him to relief, as provided for by *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), and its progeny.  (Dkt. No. 29 at 4-5 [Plf.'s Response Mem. of Law].)

Third, Plaintiff argues that "Dalsheim's motion must fail because the Court is unable to make an informed decision.  The [amended] complaint makes reference[] to being seen by medical personnel at Downstate [C.F.].  These medical providers prescribed medications, demonstrating a condition."  (*Id*. at 5.)

Fourth, Plaintiff argues that, "since plaintiff followed the format of the sample [civil rights complaint] form provided by the Court, his [amended] complaint [must be found to] conform[] to the [applicable] rules.  If defendants have a problem, they should address their concerns to the Court administrator who drafted and approved the forms."  (*Id*.)

In their reply, Defendants argue that a party cannot invoke the continuing-violation doctrine to avoid statute-of-limitations problems where he knew after each alleged wrongful act that the wrongful act was actionable, but he chose not to file a federal action regarding that wrongful act within the limitations period.  (Dkt. No. 30 [Defs.' Reply Mem. of Law] [citations omitted].)  Here, argue Defendants, Plaintiff has alleged facts plausibly suggesting that he knew that Defendant Dalsheim's alleged wrongful acts were actionable during the period of May 1992

and May 1994, since he alleged that, during that time period, he repeatedly made specific complaints to both medical staff and Defendant Dalsheim regarding the adverse health effects he was experiencing due to his exposure to second-hand smoke.  (*Id.*)

## III.    ANALYSIS

As indicated above in Part II of this Report-Recommendation, the following four general issues are raised by the parties' in their memoranda of law: (1) whether Plaintiff can successfully invoke the continuing-violation doctrine to render timely his claim against Defendant Dalsheim; (2) whether Plaintiff's claim against Defendant Dalsheim can be rendered timely through a particularly liberal construction of Plaintiff's Amended Complaint; (3) whether the Court is unable to make what Plaintiff calls "an informed decision" regarding his claim against Defendant Dalsheim given the fact that Plaintiff's Amended Complaint alleges that he was seen by medical personnel at Downstate C.F., who prescribed him medications, demonstrating that he suffered from what Plaintiff calls a "condition"; and (4) whether any deficiencies regarding Plaintiff's claim against Defendant Dalsheim are excused by the fact that, in asserting that claim, Plaintiff was simply following the instructions on a form complaint provided to him by the United States District Court for the *Southern* District of New York.

In addition, during the course of my review of Plaintiff's Amended Complaint, and the law governing the claims asserted therein, a fifth issue has been raised: whether, in the alternative, Plaintiff's claim against Defendant Dalsheim should be *sua sponte* dismissed because Plaintiff has not alleged facts plausibly suggesting that Defendant Dalsheim was deliberately indifferent to any serious medical need possessed by Plaintiff, under the Eighth Amendment.

18

### A.   Whether Plaintiff Can Successfully Invoke the Continuing-Violation Doctrine to Render Timely His Claim Against Defendant Dalsheim

#### 1.   Whether, as a Threshold Matter, the Continuing-Violation Doctrine Can Ever Properly Apply to a Section 1983 Claim that Does Not Involve Allegations of Discrimination

Claims arising under 42 U.S.C. § 1983 are governed by state statutes of limitations. *Wilson v. Garcia*, 471 U.S. 261, 266-267 (1985).  In New York, such claims are governed by the general three-year limitations period governing personal injury claims.  *Owens v. Okure*, 488 U.S. 235, 251 (1989).  Accrual of the claim, however, is a question of federal law.  *Ormiston v. Nelson*, 117 F.3d 69, 71 (2d Cir. 1997).  Under federal law, generally, a claim arising under 42 U.S.C. § 1983 "accrues" when the plaintiff "knows or has reason to know of the injury which is the basis of his action."  *Pearl v. City of Long Island Beach*, 296 F.3d 76, 80 (2d Cir. 2002). However, there are some limited exceptions to this general rule.  One such limited exception is embodied in what is known as the "continuing violation doctrine."  *Nat'l R.R. Pass. Corp. v. Morgan*, 536 U.S. 101, 107 (2002).  Generally, under the continuing-violation doctrine, where there is an "ongoing discriminatory policy or practice," the accrual time for the statute of limitations may be delayed until the last act in furtherance of the policy.  *Harris v. City of New York*, 186 F.3d 243, 248 (2d Cir. 1999).[35]  The near-omnipresence of the word "discriminatory" in the aforementioned standard should not casually be set aside.

---

[35]      *See also Van Zant v. KLM Royal Dutch Airlines,* 80 F.3d 708, 713 (2d Cir. 1996) ("The continuing violation exception applies when there is evidence of an ongoing discriminatory policy or practice . . . ."); *Lambert v. Genesee Hosp.*, 10 F.3d 46, 53 (2d Cir. 1993) ("The continuing violation exception applies to cases involving specific discriminatory policies or mechanisms . . . .") [citations omitted]; *Gomes v. Avro Corp.*, 964 F.2d 1330, 1333 (2d Cir. 1992) (doctrine applies if plaintiff has experienced a "continuous practice and policy of discrimination") [citation omitted]; *see also*, *infra*, note 19 of this Report-Recommendation (citing cases from Second Circuit).

This is because it is highly questionable whether the "continuing violation" doctrine, which is "largely a creature of Title VII employment discrimination law," may also be applied in Section 1983 civil rights actions *that do not involve allegations of discrimination*.[36]  Granted, I have found five decisions by the Second Circuit suggesting that the doctrine may be applied in certain Section 1983 civil rights actions; however, all of those decisions involve allegations of discrimination.[37]  Moreover, while there are certainly a handful of district court decisions from

_____

[36]     *Jackson v. New York State*, 381 F. Supp.2d 80, 87 (N.D.N.Y. 2005) (Munson, J.) ("The applicability of the continuing violation doctrine to § 1983 civil rights actions is unclear. The doctrine is largely a creature of Title VII employment discrimination law and courts have been reluctant to apply it outside that context.") [collecting cases]; *Petrosky v. New York State DMV*, 72 F. Supp.2d 39, 55 (N.D.N.Y. 1999) (Homer, M.J.) ("The applicability of the continuing violation doctrine to section 1983 civil rights cases is unclear.  The doctrine is largely a creature of Title VII employment discrimination law and courts have been reluctant to apply it outside that context.") [citations omitted]; *McFarlan v. Coughlin*, 97-CV-0740, 1998 U.S. Dist. LEXIS 5541, at *11 (N.D.N.Y. March 13, 1998) (Homer, M.J.) ("The applicability of the continuing violation doctrine to Section 1983 cases is uncertain.  The doctrine is largely a creature of Title VII employment discrimination law and courts have been reluctant to apply it outside that context.") [collecting cases], *adopted by* 1998 U.S. Dist. LEXIS 5518, at *3 (N.D.N.Y. Apr. 15, 1998) (Pooler, J.) (agreeing with magistrate judge's "carefully-reasoned decision" regarding, *inter alia*, the application of the continuing violation doctrine); *see also Cabassa v. Gummerson*, 01-CV-1039, 2006 WL 1559215, at *6 (N.D.N.Y. March 30, 2006) (Lowe, M.J.) ("As an initial matter, it is questionable whether the 'continuing violation' doctrine, which is typically applied in discrimination actions, may also be applied in actions filed pursuant to 42 U.S.C. § 1983.") [citations omitted], *adopted by*, 2006 WL 1555656 (N.D.N.Y. June 1, 2006) (Hurd, J.); *see also Bailey v. Colgate-Palmolive Co.*, 99-CV-3228, 2003 WL 21108325, at *8 (S.D.N.Y. May 14, 2003) ("The continuing violation doctrine generally has been limited to situations where a specific discriminatory policy or mechanism has been alleged.") [citations omitted].

[37]     *See Washington v. Rockland*, 373 F.3d 310, 317-318 (2d Cir. 2004) (applying continuing-violation doctrine to § 1983 claim involving allegations of employment discrimination based on race); *Connolly v. McCall*, 254 F.3d 36, 40-42 (2d Cir. 2001) (applying continuing-violation doctrine to § 1983 claim involving allegations of discrimination based on plaintiffs' status as "re-employed retirees," in violation of Equal Protection Clause); *Harris v. City of New York*, 186 F.3d 243, 249 (2d Cir. 1999) (applying continuing-violation doctrine to § 1983 claim involving allegations of employment discrimination based on disability); *Jaghory v. New York State Dept. of Educ.,* 131 F.3d 326, 328, 331 (2d Cir. 1997) (applying continuing-violation doctrine to § 1983 claim involving allegations of discrimination in medical licensing

within the Second Circuit that assume that the continuing-violation doctrine is applicable to Section 1983 civil rights actions that do not appear to involve allegations of discrimination, they make that assumption without much, if any, discussion.[38]  For example, this handful of district court decisions do not reconcile their extension of the doctrine with the Supreme Court's decision in *Nat'l R.R. Pass. Corp. v. Morgan*, 536 U.S. 101, 107 (2002), which generally restricted the scope of the doctrine.[39]  Nor do they reconcile their extension of the doctrine with the legion of cases from within the Second Circuit stating that the application of the doctrine is disfavored.[40]  Moreover, this handful of district court decisions appears to be greatly outnumbered by other district court decisions permitting the doctrine to apply to Section 1983 civil rights actions *only* if the actions involve allegations of discrimination.[41]

---

based on plaintiff's residency and/or alienage); *Cornwell v. Robinson*, 23 F.3d 694, 704 (2d Cir. 1994) (suggesting that continuing-violation doctrine might apply to § 1983 claim involving allegations of employment discrimination based on gender and race).

[38]      *See, e.g., Shomo v. City of New York*, 03-CV-10213, 2005 WL 756834, at *4-5 (S.D.N.Y. Apr. 4, 2005) (assuming, without discussion, that continuing-violation doctrine applies to prisoner's Section 1983 deliberate-indifference claim that did not appear to involve an allegation of discrimination).

[39]      *See Burrows v. Brooksdale Hosp. and Med. Ctr.*, No. 02-7473, 2003 WL 1240609, at *2 (2d Cir. March 18, 2003) ("Our court has not yet had occasion to rule on what, if anything, of the continuing violation doctrine may survive the Supreme Court's decision in [*Morgan*].") (Summary Order, cited not as precedential authority, but only to show that the Second Circuit has not decided how much, if any, of the doctrine survives the Supreme Court's aforementioned decision in *Morgan,* in accord with a similar practice by the Second Circuit in *Khan v. Ashcroft*, 352 F.3d 521, 525 [2d Cir. 2003]).

[40]      *See, infra*, note 52 of this Report-Recommendation (citing sample cases).

[41]      *See, e.g., Remigo v. Kelly*, 04-CV-1877, 2005 WL 1950138, at *2, 8 (S.D.N.Y. Aug. 12, 2005) (applying continuing-violation doctrine to § 1983 claim involving allegations of, *inter alia*, discrimination against plaintiff based on relatively high value of his automobile, in violation of Equal Protection Clause); *Brady v. Dammer*, 04-CV-1126, 2005 WL 1871183, at *6-

While I have found no decisions specifically discussing the *reason* that allegations of discrimination are necessary to the applicability of the continuing violation doctrine, it appears that allegations of discrimination are so necessary because they, by their very nature, are often more likely than are other allegations to arise from a series of separate actions by multiple individuals, which span different times and places, and which collectively constitute the alleged wrong (e.g., the discriminatory policy or practice).[42]

I note that Plaintiff cites *Pino v. Ryan*, 49 F.3d 51 (2d Cir. 1995) for the proposition that the Second Circuit has recognized that the continuing-violation doctrine may apply to deliberate

---

12 (N.D.N.Y. Aug. 3, 2005) (Kahn, J.) (applying continuing-violation doctrine to § 1983 claim involving allegations of employment discrimination based on plaintiff's status as union member and as disabled person); *Velez v. Reynolds,* 325 F. Supp.2d 293, 298-299, 312 (S.D.N.Y. 2004) (applying continuing-violation doctrine to § 1983 claim involving allegations of discrimination against plaintiff based on her status as mother who was victim of domestic violence, in violation of Equal Protection Clause); *Deepwells Estates Inc. v. Inc. Village of Head of Harbor*, 973 F. Supp. 338, 341-343, 345-347 (E.D.N.Y. 1997) (applying continuing-violation doctrine to § 1983 claim involving allegations of discrimination based on plaintiffs' status as private real estate developers); *White-Ruiz v. City of New York*, 983 F. Supp. 365, 372-375, 385-387, 392-393 (S.D.N.Y. 1997) (applying continuing-violation doctrine to § 1983 claim involving allegations of employment discrimination based on her status as whistleblower regarding police misconduct); *Kim v. Dial Serv. Intern., Inc.*, 96-CV-03327, 1997 WL 5902, at *5 (S.D.N.Y. Jan. 8, 1997) (applying continuing-violation doctrine to § 1983 claim involving allegations of employment discrimination based on age, race, and national origin); *Gros v. Port Washington Police Dist.*, 944 F. Supp. 1072, 1075, 1083 (E.D.N.Y. 1996) (suggesting that continuing-violation doctrine might apply to § 1983 claim involving allegations of employment discrimination based on plaintiff's participation in Police Benevolent Association affairs, and based on his status as a grievant); *Wise v. New York City Police Dept.*, 928 F. Supp. 355, 360, 366-367 (S.D.N.Y. 1996) (applying continuing-violation doctrine to § 1983 claim involving allegations of employment discrimination based on sex); *see also*, *supra*, note 18 of this Report-Recommendation (citing cases).

[42]      *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002) (opining that the continuing-violation doctrine would be appropriate in hostile-work-environment cases because those claims are "composed of a series of separate acts that collectively constitute one unlawful employment practice") [internal quotation marks and citation omitted].

indifference claims arising under 42 U.S.C. § 1983.[43]  However, *Pino* is merely consistent with the proposition that the continuing-violation doctrine may apply to deliberate indifference claims arising under 42 U.S.C. § 1983 *if those claims involve allegations of discrimination*.  Indeed, the Second Circuit in *Pino* expressly held that "[a] dismissal . . . based on the statute of limitations is especially appropriate where, as in this case, . . . plaintiff has alleged no facts indicating a continuous or ongoing violation of his constitutional rights."[44]  Among the facts not alleged by the plaintiff in *Pino* were any facts indicating discrimination by the defendants.[45]

Plaintiff also cites, for the same proposition, *Cole v. Miraflor*, 99-CV-0977, 2001 WL 138765 (S.D.N.Y. Feb.19, 2001).  In *Cole*, the Southern District of New York applied the continuing-violation doctrine to prisoner's Section 1983 deliberate-indifference claim that did not appear to involve an allegation of discrimination.[46]  The problem with *Cole* is that it relies entirely on *Pino* for its rather implicit conclusion that the continuing-violation doctrine is applicable to a prisoner's Section 1983 deliberate-indifference claim that did not involve an allegation of discrimination.[47]  *Cole* is, therefore, in my opinion, a slender reed upon which to balance a conclusion that the continuing-violation doctrine is applicable to a prisoner's Section 1983 deliberate-indifference claim that did not involve an allegation of discrimination.

A slightly more persuasive case, not cited by Plaintiff, might have been *Pratts v. Coombe*,

---

[43]     (Dkt. No. 29, at 2, n.1 [Plf.'s Response Mem. of Law].)

[44]     *Pino v. Ryan*, 49 F.3d 51, 54 (2d Cir. 1995).

[45]     *See generally Pino*, 49 F.3d at 51-54.

[46]     *Cole*, 2001 WL 138765, at *5-6.

[47]     *Id*. at *6.

59 F. App'x 392 (2d Cir. 2003), in which the Second Circuit stated that the district court may

wish to instruct the prisoner on remand that, in his attempt to benefit from the continuing-

violation doctrine with respect to his deliberate indifference claim, he should plead "both an

ongoing policy of deliberate indifference and some non-time-barred acts in furtherance of that

policy."[48]   However, *Pratts* is a Summary Order issued before January 1, 2007, and thus without

precedential effect in this Circuit, pursuant to Second Circuit Rule § 0.23.  Even if the Court

were to look to *Pratts* for guidance, it is unclear from that brief decision whether by not

mentioning allegations of discrimination the Second Circuit was indicating that such allegations

were not necessary to successfully invoke the continuing-violation doctrine.  What is more, the

Second Circuit also advised the district court that the prisoner had to allege "as to each defendant

named, facts evidencing deliberate indifference [within the three-year limitations period]."[49]

And, for reasons explained below, I find that Plaintiff has not, in his Amended Complaint,

alleged facts plausibly suggesting deliberate indifference by Defendant Dalsheim at any time

after May 1994.

   For all of these reasons, I conclude that the weight of authority in the Second Circuit

appears to hold that the continuing-violation doctrine may not be applied to Section 1983 civil

rights claims that do not involve allegations of discrimination.[50]  I note that this appears to be the

---

[48]       *Pratts v. Coombe*, 59 F. App'x 392, 395 (2d Cir. 2003).

[49]       *Pratts*, 59 F. App'x at 395.

[50]       *See*, *supra*, notes 17-19, and 21-22 of this Report-Recommendation (citing cases).

rule in at least the Fifth, Sixth, Tenth, and Eleventh Circuits as well.[51]

Here, even liberally construing Plaintiff's lengthy Amended Complaint (which is comprised of some 39 pages, including exhibits), I can find no factual allegations plausibly suggesting any discrimination by Defendants.  (*See generally* Dkt. No. 16.)  I acknowledge that, in his Amended Complaint, Plaintiff alleges that (1) "Defendant Greene has deliberately created a hostile living environment," and (2) "[t]he acts complained of deprived Plaintiff . . . of his rights . . . [t]o equal protection of the laws . . . ."  (*Id.* at 9, 16.)  However, setting aside the

---

[51]     **Fifth Circuit:** *See McGregor v. La. State Univ. Bd. of Super.*, 3 F.3d 850, 866 n.27 (5th Cir.1993) ("No court to date has accepted this [continuing violation] theory in the context of plaintiff's due process claims.  In fact, courts, including this one, are wary to use the continuing violation doctrine to save claims outside the area of Title VII discrimination cases.") [collecting cases].

**Sixth Circuit:** *See LRL Prop. v. Portage Metro Hous. Auth.*, 55 F.3d 1097, 1105 n.3 (6th Cir.1995) ("Courts have been extremely reluctant to apply this doctrine outside of the context of Title VII. One court has noted, 'courts, including this one, are wary to use the continuing violation doctrine to save claims outside the area of Title VII discrimination cases.'") [citation omitted], *accord*, *Laney v. Brentwood Homes, LLC v. Town of Collierville*, 114 F. App'x 506, 511 (6th Cir. 2005).

**Tenth Circuit:** *See Oyler v. Finney*, 52 F.3d 338 (10th Cir. 1995), *aff'g*, 870 F. Supp. 1018, 1023 (D. Kan. 1994) ("Although the continuing violations doctrine has been applied in Title VII claims, it has not been extended to § 1983 actions [not involving allegations of conspiracy to discriminate].") [citing cases]; *Slusher v. Gabler*, No. 94-1079, 1994 WL 504310, at *2 (10th Cir. Sept. 15, 1994) ("This court has applied the continuing violation doctrine as an equitable remedy in the Title VII context. . . .  We have not specifically extended it to 1983 claims.") [citations omitted]; *Pike v. City of Mission, Kan.*, 731 F.2d 655, 660 (10th Cir. 1984) ("A continuing violation generally arises in the context of unconstitutional employment discrimination."), *overruled on other grounds, Baker v. Bd. of Regents*, 991 F.2d 628, 633 (10th Cir. 1993); *cf. Hunt v. Bennett*, 17 F.3d 1263, 1266 (10th Cir. 1994) (extending doctrine to Section 1983 conspiracy claim only because plaintiff was attempting "to link three alleged wrongful acts by [defendant] from August 1990 to September 1991 as a single discriminatory enterprise") [emphasis added];

**Eleventh Circuit:** *See Calhoun v. Fed. Nat'l Mortgage Assoc.*, 823 F.2d 451, 456 (11th Cir. 1987) ("Reliance on *Rubin* [*v. O'Koren*, 644 F.2d 1023 (5th Cir. 1981)] is inapposite because that case addresses a claim under 42 U.S.C.A. § 1983 for a due process violation. Kasper's claim arises under the ADEA and failure to provide a hearing does not constitute a continuing discriminatory act on these facts.").

conclusionary nature of these allegations, I can find no factual allegations plausibly suggesting that Plaintiff was a member of a class protected by the Fourteenth Amendment.

As a result, I find that Plaintiff may not rely on the continuing-violation doctrine to rescue his time-barred claim against Defendant Dalsheim from dismissal.

> **2.    Whether, Even Assuming the Doctrine Applies to Section 1983 Claims that Do Not Involve Allegations of Discrimination, Plaintiff Could Successfully Invoke the Doctrine in This Action**

Even assuming that the continuing-violation doctrine may be applied to claims that do not involve allegations of discrimination (or even assuming that Plaintiff's Amended Complaint does somehow involve allegations of discrimination), Plaintiff would be unable to rely on the continuing-violation doctrine to render timely his claim against Defendant Dalsheim.  This is because courts within the Second Circuit, which disfavor the continuing violation doctrine, use it to render a claim timely only rarely and in "compelling circumstances."[52]  Such compelling circumstances exist where

---

[52]    *See Young v. Strack*, 05-CV-9764, 2007 WL 1575256, at *4 (S.D.N.Y. May 29, 2007) ("[T]he continuing violations doctrine is disfavored and should be applied only in compelling circumstances.") [internal quotation marks and citations omitted]; *McFadden v. Kralik*, 04-CV-8135, 2007 WL 924464, at *7 (S.D.N.Y. March 28, 2007) ("[C]ourts in the Second Circuit generally disfavor the continuing violation doctrine and apply it only in 'compelling circumstances.'") [citations omitted]; *Cabassa*, 2006 WL 1559215, at *6 ("[F]ew attempts to invoke the doctrine are successful . . . and the . . . doctrine is disfavored in the Second Circuit.") [internal quotation marks and citations omitted]; *Remigio*, 2005 WL 1950138, at *8 ("[T]he continuing-violation doctrine is disfavored in this Circuit and is applied only upon a showing of compelling circumstances.") [internal quotation marks and citation omitted]; *Nakis v. Potter*, 01-CV-10047, 2004 WL 3903718, at *10, n.2 (S.D.N.Y. Dec. 15, 2004) ("Even before the [Supreme] Court's decision in [*Nat'l R.R. Pass. Corp. v.*] *Morgan* [536 U.S. 101 (2002)], the doctrine was disfavored in this Circuit . . . . and was applied only upon a showing of compelling circumstances.") [internal quotation marks and citations omitted]; *Konigsberg v. Lefevre*, 267 F. Supp.2d 255, 263 (N.D.N.Y. 2003) (Munson, S.J.) ("[F]ew attempts to invoke the doctrine are successful . . . and the . . . doctrine is disfavored in the Second Circuit.") [citations omitted], *accord*, *McFarlan*, 1998 U.S. Dist. LEXIS 5541, at *11.

> the unlawful conduct takes place over a period of time, making it
> difficult to pinpoint the exact day the violation occurred; where there is
> an express, openly espoused policy [that is] alleged to be
> discriminatory; or where there is a pattern of covert conduct such that
> the plaintiff only belatedly recognizes its unlawfulness.

*Yip v. Bd. of Tr. of SUNY*, 03-CV-0959, at *4 (W.D.N.Y. Sept. 29, 2004) [internal quotation

marks and citations omitted].  None of these compelling circumstances are present in this case.

### a.     Any Difficulty in Pinpointing Exact Day Violation(s) Occurred

Although the alleged misconduct by all Defendants took place over the period of some

fourteen years, there is no difficulty in determining when the alleged misconduct by Defendant

Dalsheim took place.  Specifically, Plaintiff repeatedly alleges that Defendant Dalsheim

committed those violations between May 1992 and May 1994.  (Dkt. No. 16, ¶¶ II.D. at 3, & III.

G [Plf.'s Am. Compl.].)  For the sake of argument, I will set aside the question of whether the

precise dates on which Defendant Dalsheim allegedly refused Plaintiff's requests for help, or

allegedly turned a blind eye to Plaintiff's complaints, could have been determined through the

use of more detail by Plaintiff in his Amended Complaint (or could be determined in the future

through the use of discovery).  To the extent the continuing-violation doctrine is needed to

construct a more precise date on which Defendant Dalsheim can be said to have committed the

alleged constitutional violations, such a date would, *at its very latest*, be May 31, 1994 (i.e., the

last day of May 1994).  The doctrine simply is not *necessary* to construct a later date.  I note that

nowhere does Plaintiff allege facts plausibly suggesting (nor does he even conclusorily allege)

that Defendant Dalsheim committed any violations after May 1994.  (*See generally* Dkt. No. 16.)

**b.      Any Express, Openly Espoused Discriminatory Policy**

Nor are there any factual allegations in Plaintiff's Amended Complaint plausibly suggesting an "express, openly espoused policy" that was alleged to be discriminatory.  Again, for the sake of argument, I will set aside the fact that Plaintiff has alleged no facts plausibly suggesting any *discrimination* whatsoever.  The more serious problem is that Plaintiff has alleged no facts plausibly suggesting any misconduct or constitutional violation that was effected pursuant to "an express policy" that was "openly espoused" by Defendants during the fourteen-year time period in question in this action.

First, Plaintiff does not allege any facts plausibly suggesting that Defendant Dalsheim disregarded Plaintiff's health pursuant to some sort of "express policy" (either written or unwritten) effected by DOCS.[53]  Second, Plaintiff does not allege any facts plausibly suggesting

_____

[53]      (*See* Dkt. No. 16, ¶ II.D. at 3 [Plf.'s Am. Compl., alleging merely that "the medical staff [responded to Plaintiff's complaints by] stat[ing] that[,] since plaintiff has not been assigned to a permanent facility, only pain medication can be prescribed for the headaches," and alleging merely that Defendant Dalsheim responded to Plaintiff's complaints by "repeatedly ignor[ing] plaintiff's health concerns and refus[ing] plaintiff's request [to make the housing areas at Downstate C.F. 'smoke free zones']"].)  The closest that Plaintiff comes to alleging facts plausibly suggesting that Defendant Dalsheim acted pursuant to an express policy is in Plaintiff's response memorandum of law, when Plaintiff alleges that

> Dalsheim and the DOCS defendants continuously, systematically, and consciously disregarded [Plaintiff's] serious medical conditions from 1992 through the present, via DOCS policy and/or custom. . . . . [P]laintiff was continuously harmed by Dalsheim, and [Plaintiff's] complaints were systematically and callously disregarded by the culpable recklessness of Dalsheim. . . .  Dalsheim systematically and callously exposed plaintiff to be overly exposed to second[-]hand smoke, via custom or policy of the DOCS.

(*Id*. at 2-3, 5.)  However, these allegations are wholly conclusory in that Plaintiff does not allege any facts plausibly suggesting (1) the precise nature of this alleged DOCS policy or custom, and (2) how or why Defendant Dalsheim was acting pursuant to that DOCS policy or custom.

28

that Defendant Dalsheim at any time "openly espoused" such an express policy.[54]  Plaintiff does

not even allege in a conclusory fashion that Defendant Dalsheim ever spoke to any of the other

Defendants in this action, either before or after May 1994 (when Plaintiff was transferred from

the correctional facility of which Defendant Dalsheim was the superintendent).  (*See generally*

Dkt. No. 16.)

Rather, Plaintiff alleges facts plausibly suggesting that what happened before May 1994

involved a *discrete* set of actors (i.e., Defendant Dalsheim and the medical staff at Downstate

C.F.) at a *discrete* location (i.e., Downstate C.F.), at a *discrete* time (i.e., May 1992 to May

1994), as compared to what happened after May 1994.[55]

Even the events that allegedly occurred after May 1994 are rather distinct from those that

occurred before May 1994.  For example, Plaintiff alleges that, before May 1994, (1) the medical

staff of Downstate C.F. provided him only prescriptions for "medications," including pain

medication, in response to his complaints of secondhand-smoke-induced "severe headaches,

nausea, eye irritation, coughing and difficulty breathing," and (2) Defendant Dalsheim repeatedly

ignored Plaintiff's health concerns, denied Plaintiff's request that Defendant Dalsheim "make the

housing areas smoke free zones, or to place [Plaintiff] in a housing area where smoking is

prohibited," and indeed actively "promoted [smoking] by giving out free tobacco to inmates upon

---

[54]     (*See generally* Dkt. No. 16, ¶¶ II.D., IV.G. [Plf.'s Am. Compl.].)

[55]     *See Nat'l R.R. Pass. Corp. v. Morgan*, 536 U.S. 101, 113 (2002) ("Each discrete
discriminatory act starts a new clock for filing charges alleging that act."); *see also Konigsberg v.
Lefevre*, 267 F. Supp.2d 255, 263 (N.D.N.Y. 2003) (Munson, J.) (finding that incidents
"involving different people, circumstances and location[s]" did not constitute a continuing
violation); *Sundaram v. Brookhaven Nat'l Lab.*, 424 F. Supp.2d 545, 561 (E.D.N.Y. 2006)
(finding that decisions that "occurred at different times" and "were made by different persons"
did not constitute a continuing violation).

arriving at Downstate."[56]

In contrast to these allegations, Plaintiff alleges that, after May 1994, he started to
complain to various DOCS employees (other than those employed at Downstate C.F.) of a host
of other physical conditions, including "clothes [that] stink like an ashtray," "skin irritation,"
"sneezing," a "sore throat," and "dizziness."[57]  He also started to complain of having to
"breath[e] in the sneezing, coughing, body odor, and defecation [odor] . . . from over 300 . . .
inmates in this [cell] block."[58]  Not only his complaints changed but his requests for relief
changed in that he started to also request both (1) diagnostic examinations of Plaintiff and (2) the
installation of "ETS detectors" to determine the level of Environmental Tobacco Smoke in the
air.[59]  Finally, after May 1994, three entirely new sets of events started allegedly occurring: (1) an
outright refusal by a physician (i.e, Defendants Silverberg) to treat or diagnose Plaintiff for health
problems related to secondhand-smoke inhalation because "DOCS won't allow him to [do so]"
as a matter of an unspecified DOCS policy or practice, (2) the failure of certain DOCS employees
(i.e., Defendants Goord and Greene) to adequately respond to numerous grievances filed by
Plaintiff, and (3) an outright denial by one DOCS employee (i.e., Defendant Daniel) of Plaintiff's

---

[56]     (Dkt. No. 16, ¶ II.D. at 3 [Plf.'s Am. Compl.]; Dkt. No. 29, at 1, 2, 5 [Plf.'s
Response Mem. of Law, alleging, *inter alia*, that Defendant Dalsheim "promoted [smoking] by
giving out free tobacco to inmates upon arriving at Downstate," and that "medical personnel at
Downstate . . . prescribed [for Plaintiff] *medications*, demonstrating a condition"] [emphasis
added].)

[57]     (Dkt. No. 16, ¶ II.D. at 3, 8 & Exs. 1, 5 [Plf.'s Am. Compl.].)

[58]     (Dkt. No. 16, ¶ II.D., Ex. 7 [Plf.'s Am. Compl.].)

[59]     (Dkt. No. 16, ¶ II.D. at 5, 8, 10 & Exs. 1-6 [Plf.'s Am. Compl.].)

right to file grievances through acts of intentional malfeasance and/or retaliation.[60]

In addition, viewed from strictly a temporal perspective, the acts committed by Defendant Dalsheim were "sufficiently isolated in time" from the "timely acts" alleged by Plaintiff as to "break the asserted continuum" of wrongdoing.[61]  Specifically, the "timely acts" were those occurring within three years before April 4, 2006 (the date of Plaintiff's original Complaint in this action).  (Dkt. No. 1 at 19 [Plf.'s Compl.].)  As a result, the earliest of these timely acts, which occurred on April 4, 2003, occurred more than **_nine years_** after the last act allegedly committed by Defendant Dalsheim in May 1994.

Simply stated, to permit Plaintiff to join the acts allegedly committed by Defendant Dalsheim to the timely acts allegedly committed on or after April 4, 2003, by conclusorily alleging that both sets of acts were manifestations of an unspecified but express and openly espoused DOCS "policy or practice" would not only fly in the face of numerous pronouncements by the Supreme Court and Second Circuit, but it would render the words "continuing violation" virtually meaningless.

### c.    Any Pattern of Covert Conduct Causing Plaintiff's Delay

Nor are there any factual allegations in Plaintiff's Amended Complaint plausibly suggesting "a pattern of covert conduct such that the plaintiff only belatedly recognizes its unlawfulness."  To the contrary, Plaintiff alleges quite expressly that the conduct of Defendant Dalsheim's subordinates was so _overtly_ wrong that Plaintiff immediately recognized its unlawfulness, prompting him to repeatedly make specific complaints about the wrong in question

---

[60]     (Dkt. No. 16, ¶ II.D. at 4-12 & Exs. 5, 6, 9, 10 [Plf.'s Am. Compl.].)

[61]     See _Quinn v. Green Tree Credit Corp._, 149 F.3d 759, 766 (2d Cir. 1998).

31

to both Defendant Dalsheim's subordinates and to Defendant Dalsheim directly between May 1992 and May 1994.  (Dkt. No. 16, ¶¶  II.D. at 3, III.G. [Plf.'s Am. Compl.].)  Simply stated, taking the factual allegations of Plaintiff's Amended Complaint as true, this is not a case where Defendant Dalsheim somehow tricked Plaintiff into not filing suit about the alleged violation in question until a date after the expiration of the three-year statute of limitations.  Rather, for whatever reason, Plaintiff simply choose not to file suit until 2006.

As a result, I find that, even assuming that the continuing-violation doctrine may be applied to claims that do not involve allegations of discrimination (or even assuming that Plaintiff's Amended Complaint does somehow involve allegations of discrimination), Plaintiff would be unable to rely on the continuing-violation doctrine to render timely his claim against Defendant Dalsheim, because Plaintiff has not alleged facts plausibly suggesting the presence of compelling circumstances warranting the application of the doctrine.

**B.     Whether Plaintiff's Claim Against Defendant Dalsheim Can Be Rendered Timely Through an Extra-Liberal Construction of His Amended Complaint**

Plaintiff's second argument (i.e., that his claim against Defendant Dalsheim is sufficient in light of the special leniency he must be afforded as a *pro se* civil rights litigant, and because of the "no set of facts" language contained in *Conley v. Gibson*, 355 U.S. 41, 45-46 [1957]) is also unpersuasive.  As an initial matter, I have found that Plaintiff's special status as a *pro se* civil rights litigant should be revoked due to his considerable litigation experience, as explained above in Part I.B. of this Report-Recommendation.  Moreover, the "no set of facts" language from *Conley v. Gibson*, on which Plaintiff relies, was "retired" recently by the Supreme Court, as explained above in Part I.A. of this Report-Recommendation.

I hasten to add that, even if I were to employ the now-retired "no set of facts" standard from *Conley v. Gibson*, I would conclude that Plaintiff has failed to allege facts indicating that compelling circumstances exist warranting the application of the continuing-violation doctrine to his time-barred claim against Defendant Dalsheim, for the reasons stated above in Part III.A.2. of this Report-Recommendation.

Similarly, I would reach the same conclusion even if I were to extend to Plaintiff the special leniency normally afforded to *pro se* civil rights litigants. As an initial matter, even when special status has been extended to a *pro se* litigant, "all normal rules of pleading are not absolutely suspended."[62] Furthermore, even if Plaintiff's violations or Rule 8 and 10 of the Federal Rules of Civil Procedure could be excused by his *pro se* status, his Amended Complaint would not be saved from dismissal. This is because, while *generally* a district court should not dismiss a *pro se* complaint (or a portion thereof) without granting leave to amend when a liberal reading of the complaint gives any indication that a valid claim might be stated,[63] "granting a *pro se* plaintiff an opportunity to amend is not required where the plaintiff has already been given a chance to amend his pleading."[64] Here, Plaintiff has already been granted *two* opportunities to amend the allegations of his original Complaint–first, when he filed his Amended Complaint on November 20, 2006, and second, when, as stated above, I liberally construed his papers in opposition to Defendants' motion as effectively amending the allegations of his Amended Complaint. Finally, even if Plaintiff's *pro se* status somehow entitled him to a *fourth* opportunity

---

[62]     *See, supra,* note 15 of this Report-Recommendation (citing cases).

[63]     *See, supra,* note 13 of this Report-Recommendation (citing authorities).

[64]     *See, supra,* note 14 of this Report-Recommendation (citing cases).

to amend his pleading, an opportunity to amend should be denied where "the problem with

[plaintiff's] causes of action is substantive" such that "[b]etter pleading will not cure it."[65]  Here,

the problem with Plaintiff's cause of action appears to be substantive, rather than merely formal:

if Plaintiff were able to assert, in good faith,[66] specific factual allegations indicating that his claim

against Defendant Dalsheim could be rendered timely because of the continuing-violation

doctrine, he surely would have already asserted such specific factual allegations.

As a result, I reject Plaintiff's second argument, i.e., that his claim against Defendant

Dalsheim is sufficient in light of the special leniency he must be afforded as a *pro se* civil rights

litigant, and because of the "no set of facts" language contained in *Conley v. Gibson*, 355 U.S.

41, 45-46 (1957).

### C.    Whether the Court Is Unable to Make What Plaintiff Calls "an Informed Decision" Regarding His Claim Against Defendant Dalsheim

Plaintiff's third argument (i.e., whether or not the Court can make what Plaintiff calls "an

informed decision" regarding his claim against Defendant Dalsheim, given that Plaintiff alleges

that he was seen by medical staff at Downstate C.F., who prescribed him medications, thus

demonstrating that he suffered from what he calls "a condition"), which would appear to be more

---

[65]    *Cuoco*, 222 F.3d at 112 (finding that repleading would be futile) (citation omitted); *see also Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.") (affirming, in part, dismissal of claim with prejudice) (citation omitted).

[66]    *See* Fed. R. Civ. P. 11(b) ("By presenting to the court . . . a pleading . . . an . . . unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,– . . . (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery . . . .").

appropriate on a motion for summary judgment, has no relevance on Defendant's motion to dismiss, which is premised on a statute-of-limitations argument.

Whether or not Plaintiff was seen by medical staff at Downstate C.F., whether or not they prescribed medications, and whether or not he suffered from a sufficiently serious medical condition for purposes of an Eighth Amendment claim simply has no bearing on whether or not Plaintiff may avail himself of the continuing-violation doctrine to render timely his claim against Defendant Dalsheim.  In reaching my above-stated conclusion that Plaintiff cannot avail himself of the continuing-violation doctrine, I assumed that the referenced factual allegations were true.

I note that, to the extent that Plaintiff is attempting to argue that he can avail himself of the continuing-violation doctrine because, after May 1994, he was suffering from the continuing effects of conduct occurring before May 1994, such an attempt is in vain.  *See McFadden v. Kralik*, 04-CV-8135, 2007 WL 924464, at *7 (S.D.N.Y. March 28, 2007) ("[A] continuing violation may not be based on the continuing effects of earlier unlawful conduct or on a completed unlawful act.") [citing cases].

As a result, I reject Plaintiff's third argument, i.e., that the Court cannot make what Plaintiff calls "an informed decision" regarding his claim against Defendant Dalsheim under the circumstances.

### D.    Whether any Deficiencies Regarding Plaintiff's Claim Against Defendant Dalsheim Are Excused Given the Form Complaint Plaintiff Used

Plaintiff's fourth argument (i.e., whether any deficiencies regarding Plaintiff's claim against Defendant Dalsheim are excused by the fact that, in asserting that claim, Plaintiff was simply following the instructions on a form complaint that he used) is also unpersuasive.  The

deficiencies in Plaintiff's claim against Defendant Dalsheim are in no way attributable to Plaintiff's use of a form complaint. Rather, they are attributable solely to two facts: (1) that Plaintiff waited until April 4, 2006 to file a federal court action against Defendant Dalsheim,[67] and (2) that the factual allegations of Plaintiff's Amended Complaint do not plausibly suggest that Plaintiff's claim against Defendant Dalsheim may be rendered timely through the application of the continuing-violation doctrine.[68]

The form complaint used by Plaintiff for his Amended Complaint appears to have come from the United States District Court for the *Southern* District of New York.[69] Since form complaints are merely recommended models (*see*, *infra*, note 72 of this Report-Recommendation), I will set aside the fact that Plaintiff chose to use the Southern District of New York's form civil rights complaint rather than the *Northern* District's form civil rights complaint, even though the Clerk of Court for the Northern District of New York had, well before the time Plaintiff prepared his Amended Complaint in April 2006, provided copies of its form civil rights complaint to all correctional facilities in New York State, including Plaintiff's correctional facility at the time, Great Meadow C.F.

Of more importance is the fact that the last page of the form complaint indicates that, at the time Plaintiff used it, it had last been previously revised in September of 2004.[70] This fact is

---

[67]    (*See* Dkt. No. 1, at 19 [Plf.'s original Compl., signed on date 4/4/06].)

[68]    *See*, *supra*, Part III.A.2. of this Report-Recommendation.

[69]    (Dkt. No. 16 at 1 [Plf.'s Am. Compl., bearing words "United States District Court [for the] Southern District of New York" on top of page].)

[70]    (*Id*. at 20 [stating "rev 09/04" on bottom of page].)

significant since it indicates that Plaintiff did not choose to start filling out the form complaint

until at least September of 2004, which was more than ten years after the last wrongful act

allegedly committed by Defendant Dalsheim.[71]  Thus, the untimeliness of Plaintiff's claim

against Defendant Dalsheim is due not to the nature of the form complaint but to Plaintiff's

decision to wait at least ten years to obtain that form complaint.

Of course, a delay in filing a federal court civil rights action can be excused in limited

circumstances, including where there is an ongoing discriminatory policy or practice.  Plaintiff

argues that his failure to allege facts plausibly suggesting the existence of such an ongoing

discriminatory policy or practice is somehow due to the nature of the form complaint he used.

(*See* Dkt. No. 29 at 5 [Plf.'s Response Mem. of Law, arguing, "Finally, since plaintiff followed

the format of the same forms provided by the Court, his complaint conforms to the rules.  If

defendants have a problem, they should address their concerns to the Court Administrator who

drafted and approved the forms."].)  This brief statement by Plaintiff may be construed as arguing

that (1) Plaintiff was limited by the form complaint, and/or (2) because he used a form complaint,

his Amended Complaint must be sufficient.

With regard to the first argument (i.e., that he was limited by the form complaint), for the

sake of brevity, I will set aside the issue of whether the instructions accompanying the Southern

District of New York's form complaint indicated that the form complaint was merely a

recommended model, and that a plaintiff may, if he chose, deviate from, or altogether dispense

---

[71]        (*See* Dkt. No. 16, ¶¶ II.D. at 3, IV.G.1. [asserting specific factual allegations against Defendant Dalsheim in only three paragraphs].)

with, the recommended model.[72]  The Court need not resolve that issue because the face of the

form complaint, itself, clearly and repeatedly states that Plaintiff may modify the form complaint

through the addition of additional sheets of paper and exhibits, as needed.[73]  For example, the

directions to Part II of the form complaint conclude by stating, "Attach additional sheets of paper

as necessary."[74]  Plaintiff clearly understood that the form complaint could, and indeed under the

circumstances should, be modified since he (1) deleted two paragraphs of the form complaint that

he apparently felt did not apply to his claims,[75] and (2) added to the form complaint 13 additional

sheets of paper and 19 pages of exhibits.[76]  Furthermore, in those attached sheets, and elsewhere

in Plaintiff's form complaint, Plaintiff asserted specific factual allegations concerning, among

other persons, Defendant Dalsheim.[77]  However, those factual allegations simply do not plausibly

suggest that, between May 1992 and May 1994, Defendant Dalsheim participated in, or initiated,

---

[72]      "[O]f course, the use of the forms [provided by the federal court system] is not
obligatory."  5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1223
at 298 (3d ed. 2004) [citations omitted]; *see also* Fed. R. Civ. P. 84, Advisory Committee Notes
("In accordance with the practice found useful in many codes, provision is here made for a
limited number of official forms which may serve as *guides* in pleading.") [emphasis added;
citations omitted]; *Fahs v. Merrill*, 142 F.3d 651, 652 (5th Cir. 1944) ("[T]he Forms [under the
Federal Rules of Civil Procedure] are not mandatory.").

[73]      (Dkt. No. 16, ¶¶ I.A., I.B., II., IV.I., VI.B., VI.E. [Plf.'s Am. Compl.].)

[74]      (*Id*. at ¶ II.)

[75]      (*See* Dkt. No. 16, ¶¶ IV, VI [deleting Paragraph "IV.H." in between Paragraphs
"IV.G." and "IV.I." and deleting Paragraph "VI.C." between Paragraphs "VI.B." and "VI..D."].)

[76]      (*See generally* Dkt. No. 16 [Plf.'s Am. Compl., consisting of 39 pages, only seven
of which is the Southern District of New York's form complaint].)

[77]      (*See* Dkt. No. 16, ¶¶ II.D. at 3, IV.G.1. [asserting specific factual allegations
against Defendant Dalsheim in three paragraphs].)

some sort of continuing violation of Plaintiff's constitutional rights.[78]  *That* is the problem with Plaintiff's claim against Defendant Dalsheim, not the fact that the claim is contained in a form complaint.

I also reject the second aforementioned argument (i.e., that, solely because he used a form complaint, Plaintiff's Amended Complaint must be sufficient).  Granted, Rule 84 of the Federal Rules of Civil Procedure provides that "[t]he forms contained in the Appendix of Forms are sufficient under the rules and are intended to indicate the simplicity and brevity of a statement which the rules contemplate."  Fed. R. Civ. P. 84.  For the sake of brevity, I will set aside the issue of whether the form civil rights complaint provided by the Southern District of New York was sufficiently similar to the forms contained in the aforementioned Appendix of Forms to enable to benefit from Rule 84.  There is a more important problem with relying on Rule 84 to save Plaintiff's claim against Defendant Dalsheim.  Simply stated, either one of two circumstances is present in this case: (1) Plaintiff adequately followed the form complaint's instruction to "[d]escribe how each of the defendants named in the caption of this complaint [such as Defendant Dalsheim] is involved in this action, along with the dates and locations of all relevant events," *see* Dkt. No. 16, ¶ II, but Plaintiff's claim against Defendant Dalsheim is simply defective in substance for the reasons stated above in this Report-Recommendation (i.e., the

---

[78]     (*Id.*)  For the sake of brevity, I will set aside the fact that Plaintiff disregarded the form complaint's instruction to "number and set forth each claim in a separate paragraph," should he decide to "allege a number of related claims" in attached sheets of paper.  (Dkt. No. 16, ¶ II. [Plf.'s Am. Compl.].)  *See also* Fed. R. Civ. P. 10(b) ("All averments of claim . . . shall be made in numbered paragraphs, the contents of each of which shall be limited as far as practicable to a statement of a single set of circumstances . . . .").

claim is untimely),[79] or (2) Plaintiff did *not* follow the form complaint's aforementioned instruction in that he failed to allege sufficient facts plausibly suggest that Defendant Dalsheim participated in, or initiated, some sort of continuing violation of Plaintiff's constitutional rights, and thus Plaintiff cannot successfully rely on Rule 84 to save that claim from dismissal.[80]  In either event, Rule 84 does not save Plaintiff's claim against Defendant Dalsheim from dismissal.[81]

For all of these reasons, I reject Plaintiff's fourth argument (i.e., whether any deficiencies regarding Plaintiff's claim against Defendant Dalsheim are excused by the fact that, in asserting that claim, Plaintiff was simply following the instructions on a form complaint provided to him

---

[79]     "It should be remembered . . . that a pleading or other paper [filled out pursuant to a form] may be letter-perfect in form but defective in substance."  12 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure* § 3162 (2d ed. 1997) [citation omitted].

[80]     Of course, a plaintiff's "proper use" of a form complaint is a rather obvious condition that must be met by a plaintiff before he or she may benefit from Rule 84.  5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1223 at 297 (3d ed. 2004) ("[T]here no longer can be any doubt that the various Forms will withstand a motion to dismiss under Rule 12(b)(6) *when properly used* and in that sense can be properly characterized as 'Official.'") [emphasis added; citations omitted]; *see also Van Horn v. Chicago Roller Skate Co.*, 15 F.R.D. 22, 23 (N.D. Ill. 1953) ("[A]ll forms contained in the Appendix, *when properly used*, may be relied upon as being invulnerable to attack under the rules.") [emphasis added].

[81]     Other courts have similarly refused to excuse the deficiencies of a *pro se* inmate's civil rights claims due to the fact that those claims were asserted in a form civil rights complaint. *See, e.g., Marshall v. Stanton*, 04-CV-1694, 2006 WL 2382271, at *2 (E.D. Cal., Aug. 17, 2006) ("The check marks [by plaintiff on the form complaint] . . . are insufficient to render the sentences by which they are placed allegations of personal injury to plaintiff, and nowhere else in the form complaint is there any indication which, if any, of the numerous deprivations alleged therein caused actual injury to plaintiff."); *Fields v. Lawton Corr. Facil.*, 05-CV-0451, 2006 WL 1982908, at *2 (W.D. Okla. July 13, 2006) ("Although Plaintiff claimed that . . . the form complaint was a hindrance, it is in fact designed to help a *pro se* litigant provide the information required under Rule 8 of the Federal Rules of Civil Procedure.").

by the United States District Court for the Southern District of New York).  While I do not

believe that my conclusion needs any further support, it should perhaps be emphasized that, by

the time he signed his Amended Complaint in this action (on November 16, 2006), Plaintiff had

already filled out and filed at least *four* other federal court civil rights complaints.[82]  He had

faced, and successfully opposed, at least *two* motions to dismiss in those four actions.[83]  (Indeed,

after successful opposing those two motions to dismiss, Plaintiff went on to settle those two

actions for more than $67,000.)[84]  Clearly, this is not a case of an inexperienced *pro se* litigant

who does not know how to use a federal court form civil rights complaint.

> **E.**     **Whether, in the Alternative, Plaintiff's Claim Against Defendant Dalsheim Should Be *Sua Sponte* Dismissed Because Plaintiff Has Not Alleged Facts Plausibly Suggesting that Dalsheim Violated the Eighth Amendment**

Consideration of the arguments raised by the parties on Defendants' motion to dismiss

does not end the proper analysis that the Court should conduct of Plaintiff's claim against

Defendant Dalsheim.  This is because the Court can, and I believe under the circumstances

---

[82]     *See Koehl v. Greene*, 05-CV-0582 (N.D.N.Y.) (DNH/DEP) (prisoner civil rights action); *Koehl v. Rowe*, 96-CV-1001 (E.D.N.Y.) (prisoner civil rights action); *Koehl v. Dalsheim*, 94-CV-3351 (S.D.N.Y.) (prisoner civil rights action); *Koehl v. Dalsheim*, 94-CV-4230 (S.D.N.Y.) (prisoner civil rights action).

[83]     *See Koehl v. Rowe*, 96-CV-1001 (E.D.N.Y.) (plaintiff successfully opposed defendants' motion to dismiss); *Koehl v. Dalsheim*, 94-CV-3351 (S.D.N.Y.) (plaintiff initially unsuccessfully opposed defendants' motion to dismiss before district court, but then subsequently obtained the reversal of that portion of the district court decision on appeal); *see also Koehl v. Dalsheim*, 94-CV-3351, 1995 WL 331905 (S.D.N.Y. June 5, 1995) (granting defendants' motion to dismiss for failure to state claim), *rev'd in part*, 85 F.3d 86 (2d Cir. 1996).

[84]     *See Koehl v. Rowe*, 96-CV-1001 (E.D.N.Y.) (prisoner civil rights action, settled on or about 6/13/02 for payment to Plaintiff of $35,000 plus $7,419.41 in expenses); *Koehl v. Dalsheim*, 94-CV-3351 (S.D.N.Y.) (prisoner civil rights action, settled on or about 5/20/99 for payment to Plaintiff of $25,000).

41

should, *sua sponte* address whether Plaintiff has alleged facts plausibly suggesting that

Defendant Dalsheim violated the Eighth Amendment.[85]

Generally, to state a claim for inadequate medical care under the Eighth Amendment, a

plaintiff must allege facts plausibly suggesting two things: (1) that he had a sufficiently serious

medical need; and (2) that the defendants were deliberately indifferent to that serious medical

need. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Chance v. Armstrong*, 143 F.3d 698, 702 (2d

Cir. 1998).

Here, the medical conditions that Plaintiff allegedly experienced at Downstate C.F.

between May 1992 and May 1994 were "severe headaches, nausea, eye irritation, coughing and

difficulty breathing."[86]  In addition, Plaintiff alleges that, more than fourteen years after he was

exposed to secondhand smoke at Downstate C.F. between May 1992 and May 1994, he was

diagnosed by a physician with "scaring [sic] of the lungs," and he was scheduled to have a lung

biopsy.[87]  It is questionable whether, taken together, these alleged medical conditions constituted

---

[85]        The authority to conduct this sua sponte analysis is derived from three sources: (1) 28 U.S.C. § 1915(e)(2)(B)(ii), which provides that "the court shall dismiss [a] case [brought by a prisoner proceeding *in forma pauperis*] at any time if the court determines that . . . the action . . . is frivolous or malicious[,] . . . fails to state a claim on which relief may be granted[,] . . . or . . . seeks monetary relief against a defendant who is immune from such relief"; (2) 28 U.S.C. § 1915A(b), which provides that, "[o]n review, the court shall . . . dismiss the [prisoner's] complaint, or any portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to state a claim upon which relief may be granted . . . ."; and (3) Fed. R. Civ. P. 12(h)(3), which provides that "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action."

[86]        (Dkt. No. 16, ¶ II.D. at 3 [Plf.'s Am. Compl.].)

[87]        (Dkt. No. 16, ¶ II.D. at 11 [Plf.'s Am. Compl.].)

a "serious medical need" for purposes of the Eighth Amendment.[88]  However, I am cognizant of

the Supreme Court's holding in *Helling v. McKinney*, wherein the Court found that prison

officials may violate the Eighth Amendment by exposing inmates to "unreasonably high levels"

of environmental tobacco smoke.[89]  I am also cognizant that Plaintiff has alleged that, in the

common areas at Downstate C.F. between May 1992 and May 1994, where he was "forced to

stay," there was "constant[] smoking" of "cigarettes, cigars, and pipes" by both  inmates and

staff.[90]  As a result, I will assume for the sake of argument that, when considered together, the

medical conditions that Plaintiff alleged he experienced between May 1992 and May 1994

constituted a "serious medical need" for purposes of the Eighth Amendment.

Rather, the problem with Plaintiff's Eighth Amendment claim against Defendant

Dalsheim has to do with the second prong of the above-stated two-pronged test, i.e., whether the

defendants were deliberately indifferent to the plaintiff's serious medical need.  An official is

"deliberately indifferent" to a serious medical need when he "'knows of and disregards an

excessive risk to inmate health or safety.'"  *Johnson v. Wright*, 412 F.3d 398, 403 (2d Cir. 2005)

---

[88]  *See Grant v. Coughlin*, 91-CV-3433, 1992 WL 142037, at *3 (S.D.N.Y. June 9, 1992) (holding that "irritat[ion] of [plaintiff's] throat and lungs," and a "risk of serious medical harm" due to exposure to secondhand smoke did not satisfy requirement of Eighth Amendment that plaintiff had a sufficiently serious medical need) [citation omitted]; *see also Clemmons v. Bohannon*, 956 F.2d 1523, 1526-1527 (10th Cir. 1992) ("shortness of breath," irritation of throat, eyes and nose, and fact that exposure to second-hand smoke could possibly lead to "serious carcinogenic effects" did not, together, constitute medical condition that was sufficiently serious for purposes of Eighth Amendment) [citations omitted]; *Melendez v. Cunningham*, 974 F.2d 1329, at *1-3 (1st Cir. 1992) (aggravation of plaintiff's allergies and sinus problems due to secondhand smoke caused by plaintiff's cellmates was a deprivation that was sufficiently serious for purposes of Eighth Amendment).

[89]  *Helling v. McKinney*, 509 U.S. 25, 35-36 (1993).

[90]  (Dkt. No. 1, ¶ II.D. at 3.)

(citing *Farmer v. Brennan*, 511 U.S. 825, 837 [1994]).  What this means is that  "'the official

must both be aware of facts from which the inference could be drawn that a substantial risk of

serious harm exists, and he must also draw the inference.'"  *Johnson*, 412 F.3d at 403 [citing

*Farmer*, 511 U.S. at 837].

Here, Plaintiff does not allege facts plausibly suggesting that Defendant Dalsheim knew

of, and disregarded, an excessive risk to Plaintiff's health or safety while Plaintiff was

incarcerated at Downstate C.F. between May 1992 and May 1994.  For example, while Plaintiff

alleges that, between May 1992 and May 1994, he "repeatedly spoke" to Defendant Dalsheim

about his "severe health problems" due to secondhand smoke, Plaintiff also alleges that, at the

time, those "severe health problems" consisted merely of "severe headaches, nausea, eye

irritation, coughing and difficulty breathing."[91]  Plaintiff does not even conclusorily allege that,

between May 1992 and May 1994, Defendant Dalsheim was aware of any of the more serious

adverse health effects allegedly experienced by Plaintiff after May 1994.  (In particular, I note

that the first time that *anyone* was aware of the alleged "scaring [sic] of [Plaintiff's] lungs," and

the alleged need for a lung biopsy, was fourteen years after Plaintiff was transferred from

Downstate C.F.)[92]  Moreover, Plaintiff alleges that, in response to each of his "repeated[]"

complaints between May 1992 and May 1994, the medical staff of Downstate C.F. provided him

prescriptions, including a prescription for pain medication.[93]

---

[91]      (Dkt. No. 16, ¶ II.D. at 3 [Plf.'s Am. Compl.].)

[92]      (Dkt. No. 16, ¶ II.D. at 11 [Plf.'s Am. Compl.].)

[93]      (Dkt. No. 16, ¶ II.D. at 3 [Plf.'s Am. Compl.].)  I note that, according to the
allegations contained in Plaintiff's Memorandum of Law, this pain medication was not the only
medication that the medical personnel at Downstate C.F. prescribed for Plaintiff.  (Dkt. No. 29,

Granted, Plaintiff also alleges that Defendant Dalsheim (1) repeatedly denied Plaintiff's request that he "make the housing areas smoke free zones, or to place [Plaintiff] in a housing area where smoking is prohibited," and (2) actively "promoted [smoking] by giving out free tobacco to inmates upon arriving at Downstate."[94]  However, Plaintiff does not allege facts plausibly suggesting that Defendant Dalsheim knew that Plaintiff was inhaling unreasonably high levels of environmental tobacco smoke, or that Defendant Dalsheim knew that his distribution of cigarettes would have serious medical consequences for Plaintiff.[95]  I note that, during the time in question (May 1992 to May 1994), Plaintiff alleges that he was not constantly incarcerated at Downstate C.F. but was being shuffled back and forth between Downstate C.F. and the custody of the New York Department of Correction's Rikers Island Facility.  (Dkt. No. 16, ¶ II.D. at 3 [Plf.'s Am. Compl.].)[96]  As a result, at most, Defendant Dalsheim's alleged response to Plaintiff's complaints between May 1992 and May 1994 would be *negligence*, which is not

---

at 1, 2, 5 [Plf.'s Response Mem. of Law, alleging, *inter alia*, that "medical personnel at Downstate . . . prescribed [for Plaintiff] *medications*, demonstrating a condition"] [emphasis added].)

[94]     (Dkt. No. 16, ¶ II.D. at 3 [Plf.'s Am. Compl.]; Dkt. No. 29, at 1, 2, 5 [Plf.'s Response Mem. of Law, alleging, *inter alia*, that Defendant Dalsheim "promoted [smoking] by giving out free tobacco to inmates upon arriving at Downstate"].)

[95]     (*Id.*)

[96]     I note also that the alleged actions by Defendant Dalsheim occurred between May 1992 and May 1994--a time when the Supreme Court's seminal decision on secondhand smoke in prisons, *Helling v. McKinney*, 509 U.S. 25 (1993), had only recently been issued.  Indeed, some of the alleged actions by Defendant Dalsheim occurred *before* the issuance of that decision (on June 18, 1993).

45

actionable under the Eighth Amendment.[97]  Defendant Dalsheim's alleged response would not

constitute *criminal recklessness*, which is the sort of mental state that is required for liability

under the Eighth Amendment.[98]

As a result, I recommend that, in the alternative, the Court *sua sponte* dismiss Plaintiff's

claim against Defendant Dalsheim because Plaintiff has not alleged facts plausibly suggesting

that Defendant Dalsheim violated the Eighth Amendment.

**ACCORDINGLY**, it is

**RECOMMENDED** that Defendants' motion to dismiss Plaintiff's claim against

Defendant Dalsheim (Dkt. No. 27) be **GRANTED**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten days

within which to file written objections to the foregoing report.  Such objections shall be filed

with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN**

**DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85, 89 (2d

Cir. 1993) (citing *Small v. Sec'y of Health and Human Svcs.*, 892 F.2d 15 [2d Cir. 1989]); 28

U.S.C. § 636(b); Fed. R. Civ. P. 6(a), 6(e), 72.

---

[97]     *See Estelle*, 429 U.S. at 106 ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.  Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); *see also Benjamin v. Comm'r of DOCS*, 02-CV-1703, 2007 U.S. Dist. LEXIS 58788, at *23-24 (S.D.N.Y. Aug. 10, 2007) (reciting referenced point of law regarding negligence in secondhand-smoke case).

[98]     "'The required state of mind [for a deliberate indifference claim under the Eighth Amendment], equivalent to criminal recklessness, is that the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists; and he must also draw the inference.'"  *Evering v. Rielly*, 98-CV-6718, 2001 U.S. Dist. LEXIS 15549, at *30 (S.D.N.Y. Sept. 28, 2001) (quoting *Hemmings v. Gorczyk*, 134 F.3d 104, 108 [2d Cir. 1998]).

Dated: September 10, 2007
        Syracuse, New York

George H. Lowe
United States Magistrate Judge